## GAY v. CITY OF FORT WORTH.
(No. 11914.)

Court of Civil Appeals of Texas. Fort Worth.
Feb. 11, 1928.

Rehearing Denied March 10, 1928.

1. Wills ⚷➙608(1)—Under rule in Shelly's Case, devise to individual and heirs of her body vests fee without remainder.

Under the rule in Shelly's Case, a devise to a named individual and to the heirs of her body vests a fee-simple title without remainder.

2. Wills ⚷➙470—In determining intention of testator, will must be considered as whole.

In determining the intention of the maker of a will, it must be considered as a whole.

3. Wills ⚷➙608(3)—Under devise to daughter and heirs of her body, with limitation over to testatrix's mother should daughter die childless, term "heirs" designated children, who took remainder as purchasers after termination of mother's life estate.

Where testatrix devised real estate to her infant daughter and to heirs of her body, with limitation over to testatrix's mother in case daughter should die without issue, her intention in use of the term "heirs of her body" was to designate children of her daughter instead of her heirs generally, and hence children, if any should be born to the daughter, took land as purchasers of remainder after termination of life estate vesting in their mother.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Heirs.]

4. Wills ⚷➙601(8)—Provision that testatrix's mother have entire estate, if testatrix's daughters died without issue, held precatory, not destroying express devise to daughter and her children.

Where testatrix devised land to an infant daughter and to heirs of her body, and, in case daughter died without leaving issue, then to testatrix's mother, her heirs and assigns in fee, it being intention that mother have entire estate, if testatrix's own children died without leaving issue, terms used in expressing desire and intention that mother have entire estate held precatory in character, and did not destroy express devise to testatrix's daughter and her children, but, in event of death of daughter without issue, testatrix's mother took fee title to land devised.

5. Wills ⚷➙595—Devises by implication, not being favored, are strictly construed.

Devises by implication, not being favored, are to be strictly construed.

On Motion for Rehearing.

6. Wills ⚷➙697(1)—Plaintiff, showing no vested interest in land devised, could not sue for construction of will.

Where plaintiff's grandmother, owning undivided one half interest in land, other half of which was held by plaintiff's mother, devised land to another daughter and to heirs of her body, and, in case devisee died without issue, land was devised to testatrix's mother in fee, plaintiff, showing no vested interest in land either by inheritance or by conveyance, could not bring action to recover land devised in which he sought construction of grandmother's will and to enjoin waste on land and for an accounting.

Appeal from District Court, Tarrant County; James E. Mercer, Judge.

Action by John L. Gay against the City of Fort Worth. From a judgment for the defendant, plaintiff appeals. Affirmed.

C. C. Gumm, of Fort Worth, for appellant.
R. E. Rourer, J. M. Floyd, F. G. Coates, and R. B. Young, all of Fort Worth, for appellee.

CONNER, C. J. This suit was instituted by John L. Gay against the city of Fort Worth, and a number of other parties not necessary to name, in view of the fact that plaintiff alleges that they had been made parties in order to have all persons interested in the suit before the court, asserting that the plaintiff "is the owner of an estate of inheritance in and to the following described tract of land located in the city of Fort Worth, Tarrant county, Tex., described as follows." The petition then sets forth a description of 358 acres of land, and proceeds with the further specific allegation that:

"The plaintiff's title in and to said tract of land and premises deraigns from the last will and testament of M. J. E. Turner,"

—a copy of which is set forth in the petition reading as follows:

"Know all men by these presents that I, M. J. E. Turner, of the county of Tarrant and state of Texas, being of sound and disposing mind and memory, do make and publish this my last will and testament, hereby revoking all other wills by me heretofore made.

"First: I direct that all my just debts and funeral charges shall, by my executor, hereinafter named, be paid out of my estate, as soon after my decease as shall by him be found convenient.

"Second: I give and bequeath to my mother, Edith J. Ferguson, all my household and kitchen furniture, and my horse and carriage, and the harness belonging thereto.

"Third: I give and bequeath all the residue of my estate, both real and personal, and especially all my interest being an undivided one-half (my child, Eda Bell Turner owning the other half) in and of six hundred and fifty acres of land, situated on Silver creek in Tarrant county, Texas, known as survey No. one (1) patented to the heirs of H. G. Catlett, deceased, Robert Toombs and G. W. Crawford, assignee of J. Wilcox on the 31st day of July, 1857, to my infant daughter, Sarah Virginia Turner, and to the heirs of her body, and in case my said daughter, Sarah Virginia should happen to die without leaving issue, then I give the estate herein devised to her my mother, Edith J. Ferguson, her heirs and assigns in fee simple, it being my desire and intention that my mother, her heirs and assigns should have my entire

estate, in preference to all others, if my own children, Sarah Virginia and Eda Bell both should die without leaving issue.

"Fourth: I constitute and appoint my father, W. T. Ferguson guardian of the persons of my children, Eda Bell and Sarah Virginia, and I desire and direct that he should be required to give bond or security for the management of the estate devised by this my will.

"Fifth: I constitute and appoint my father, W. T. Ferguson sole executor of this my will, and direct that no bond or security shall be required of him as executor.

"Sixth: It is my will that no action shall be had in the district court, or in any probate court, in the administration of my estate, other than to prove and record this will, and to return an inventory and appraisement of my estate, and I authorize and empower him my said executor to sell and dispose of any portion of my estate, real or personal at public or private sale, and in the manner that may seem to him best, for the purpose of paying my just debts, and the necessary and reasonable expenses, costs and charges of executing and carrying into effect the directions given, and the bequest made, in this my will.

"In witness whereof, I have hereunto set my hand, this the sixth day of June, A. D. 1875, in presence of W. T. Field and J. P. Smith.

"M. J. E. Turner.

"The above instrument was now here subscribed by Mrs. M. J. E. Turner, the testatrix in our presence, and we, at her request and in her presence, signed our names hereto, as attesting witnesses.                    W. T. Field.

"J. P. Smith."

Plaintiff further alleged that M. J. E. Turner died in 1875, leaving surviving her two minor daughters, Eda Bell and Sarah Virginia, and no other children; that Sarah Virginia was 53 years of age, had been married twice, and had no children; that appellant was the only child of Eda Bell and her husband, George B. Gay.

Appellant further alleged that the city of Fort Worth in 1913 and 1914, under a chain of title that the city sets forth, dammed the west fork of the Trinity river, thereby forming a lake known as Lake Worth, the water of which covers 182 acres of the 358 acres in question; that such 182 acres was totally wasted and destroyed, the same being rich land worth $250 an acre; that the remainder of said tract, being upland, was greatly depreciated in value in that it was worth $150 per acre before said lake was formed and worth only $40 per acre thereafter; that certain fences and trees and a two-room house and a log stable had been removed from said upland, all of which constituted waste and a continuing wrong irreparably damaging appellant, leaving him without adequate legal remedy.

Appellant then prayed that the court construe the will in question, alleging it to be highly involved; that the city of Fort Worth be enjoined from further wasting said land; that an accounting be had of the waste done, and that the funds arising by virtue of such accounting be paid into the registry of the court and invested in interest-bearing securities; that the estate of the city of Fort Worth in said land be forfeited, fee-simple title and right of possession vested in appellant, after accounting for waste, or, in the alternative, that appellant recover damages, or that the city of Fort Worth be required to execute a bond in the amount of such waste insuring the forthcoming of said land.

The appellee city, among other pleadings not necessary to notice, presented a general demurrer to the plaintiff's petition, which the trial court sustained, and, plaintiff declining to amend, dismissed the suit, to which ruling and judgment the plaintiff excepted, and has prosecuted this appeal.

The brief of appellee sets forth a number of facts not appearing on the face of the petition, thus indicating, as was admitted before us on the hearing, that the trial court made his ruling after the hearing of such evidence. We have no agreement or certified statement of facts which shows the evidence so heard by the court, and it is asserted in the brief of appellee, and not denied in behalf of appellant, that, during the course of hearing, appellant, through his attorney of record, admitted in open court that in this case appellant was claiming his interest directly through and under the will of Mrs. M. J. E. Turner, and not otherwise or in any other way, and admitted and stated in open court, for the purpose of narrowing and clarifying the issues, that he was not claiming through or under his great grandmother, Edith J. Ferguson, or through or under any of Edith J. Ferguson's descendants, or through or under his mother, Eda Bell Gay, but was claiming and suing as an heir and devisee, deraigning his title directly from Mrs. M. J. E. Turner by virtue of the terms and provisions of her will.

It thus appears that the vital question, the one upon which all others are dependent, is whether or not appellant has shown any inheritable interest or title whatever under the will of Mrs. M. J. E. Turner, above copied.

[1] The able counsel for appellant has presented a brief of some 80 typewritten pages, including numerous citations from decisions which manifest great industry and learning, but we think the whole, in so far as it relates to the vital question of whether appellant has an inheritable interest under the will, rests upon the contention, in substance, that the will vested in Sarah Virginia Turner only a life estate in the land, and that hence, upon her death without issue, the remainder of the fee-simple title will vest in appellant by virtue of his relation to her as an heir, or, if not, by virtue of a transfer to him by his mother, which he sets forth in his petition. This contention seems to be based largely upon the third section of the will, wherein the testator states:

"It being my desire and ·intention that my mother, her heirs and assigns should have my entire estate, in preference to all others, *if my own children, Sarah Virginia and Eda Bell both should die without leaving issue.*" (Italics ours.)

[2, 3] According to the allegations given in appellant's petition, Eda Bell was about four years old and Sarah Virginia about one year old at the time the will was written, and it further appears from the petition that Sarah Virginia is now a married woman, yet living, and has never had a child. ·In the absence of the words we have italicized, it seems clear that, under the rule in Shelly's Case, which is the rule that has·been adopted in this state, the title cast upon Sarah Virginia by the terms of the will would be a fee-simple title.   Under the rule referred to, a devise to a named individual "and to the heirs of her' body" vests a fee-simple title without remainder.   See Crist v. Morgan (Tex. Com. App.) 245 S. W. 659; Texas Co. v. Meador (Tex. Com. App.) 250 S. W. 148; Hancock v. Butler, 21 Tex. 820; Hopkins v. Hopkins, 103 Tex. 15, 122· S. W. 15; Simonton v. White, 93 Tex. 50, 53 S. W. 339, 77 Am. St. Rep. 824; Hunting v. Jones (Tex. Com. App.) 215 S. W. 959; Shugart v. Shugart (Tex. Com. App.) 248 S. W. 328; St. Paul's Sanitarium v. Freeman, 102 Tex. 376, 117 S. W. 425, 132 Am. St. Rep. 886.  But the cardinal principal in the construction of wills is to determine the intention of the maker, and in determining such intention the will as a whole must be considered, and we are inclined to the opinion that, in view of the words in the third paragraph of the will, which we have quoted and emphasized, the term "heirs of her body" was intended to designate the children of Sarah Virginia instead of' her heirs generally, and hence that the children, if any should be born to her, would take as purchasers of the remainder after the termination of the life estate thereby vested in the mother.  If this construction of the devise be adopted, no title or interest of any character whatever would vest in either appellant or his mother, Eda Bell, in event Sarah Virginia had issue prior to her death, and, while Sarah Virginia thus far is without issue, she is still living, and presumably able ·to bear children.   See Reeves v. Simpson (Tex. Civ. App.) 182 S. W. 68; Quigley's Trustee v. Quigley, 161 Ky. 85, 170 S. W. 523; 23 Corpus Juris, p. 124, §§ 61 and 62, and numerous cases cited in note 56.

[4] However, the will expressly provides for the event of Sarah Virginia dying without leaving issue.  In that event, the testator says:

"I give the estate herein devised to my mother, Edith J. Ferguson, her heirs and assigns in fee simple, it being my desire and intention that my mother, her heirs and assigns should have my entire estate, in preference to all others, if my own children, Sarah Virginia and Eda Bell both should die without leaving issue."

It is to be noted that, in the event of Sarah Virginia dying without issue, the testator in unmistakable terms devised the estate described in the will to her mother, Edith J. Ferguson, and· her heirs and assigns in ·fee simple, thus, in the event stated under the rule in Shelly's Case, vesting in Mrs. Ferguson the fee-simple title without remainder over to any one, these terms being followed by an expression of her desire and intention that her mother shall have, in the event stated, her entire estate in preference to all others, as shown by the further words "if my own children Sarah Virginia and Eda Bell both shall die without leaving issue."  The terms used in expressing the testator's desire and intention that her mother should have her entire estate, in preference to ·all others in event both Sarah Virginia and Eda Bell should both die without issue, are precatory in character, and should not be given the effect of destroying an express devise to another, unless other terms in the will so require.  See opinion of this court in case No. 11891, J. E. Arrington v. Mrs. Jesse McDaniel, 4 S.W.(2d) 264, not yet published.  Does this secondary condition mean, as appellant in effect contends, that the devise to the mother is of no effect whatever in event Sarah Virginia and Eda Bell both die, without leaving issue, and that, in such event, appellant's mother would inherit an interest in Sarah Virginia's estate, and he, by virtue of his kinship to, and conveyance from, his mother be entitled to maintain this action as a remainderman?

[5] We have been unable to bring ourselves to this conclusion.  Such a conclusion can only be reached by implication, and devises by implication are not favored, but are strictly construed.  The terms following the express devise to the mother, Mrs. Ferguson, is not, as it seems to us, of clear meaning.  Indeed, appellant in his suit asserts the language to be ambiguous, and therefore prays for a construction of the will.  The language certainly falls short of a clear devise of an interest in the land described in the will to Eda Bell, or to her child or children in event Sarah Virginia should die without issue.  Had such been the intent of the testator, words to that effect could have been used, and we know of no reason why they should not have been used, if such had been her intent.

A possible, if not probable, construction of the terms used in expressing the testator's desire in event both her daughters should die without issue is that, at the time, she had in mind that both children were of tender age, and that, should both die before maturity or without leaving issue, she (the testator) would, under our laws of descent and distribution, inherit an interest in the un-

divided estate owned by Eda Bell, in which event she desired such interest to also go to her mother to the exclusion of all others. But whether such be the true construction or not, we are of opinion that no interpretation can properly be put upon the language under consideration that will have the effect of defeating the express devise to Mrs. Ferguson in event of the death of Sarah Virginia without issue.

Counsel for appellee have cited numerous cases illustrating the rules proper for our guidance in the construction of the will under consideration. We shall not extend our opinion by citing or quoting from them all. We think, however, a few will be enlightening.

In 40 Cyc. Wills, p. 1390, the rule is stated as follows:

"Devise or bequest by implication. The presumption, however, is very strong against the testator having intended any devise or bequest not set forth in his will; and in order that the devise or bequest may be effectual the implication must be a necessary one, that is, the probability of an intention to make the devise or bequest implied must appear from the will to be so strong that a contrary intention cannot reasonably be supposed to have existed in the testator's mind."

In 28 Ruling Case Law, Wills, the following statements are found:

"A bequest or devise may be made by mere implication, but to raise such implication it must be necessary to do so in order to carry out a manifest and plain intent of the testator which would fail unless such implication be allowed. Gifts by implication are not favored and cannot rest on conjecture. A gift by implication will not be inferred from mere silence but must be founded on expressions in the will. It has been said that the probability of an intention to make the implied gift must be so strong that an intention contrary to that which is imputed to the testator cannot be supposed to have existed in his mind."

In a note to Connor v. Gardner, 230 Ill. 258, 82 N. E. 640, found in 15 L. R. A. (N. S.) 73–76, a number of cases dealing with devises and gifts by implication are collected, and from these cases the following rules appear:

(1) Where an express estate is created by an instrument, it cannot be implied that a different estate was intended.

(2) No implication can arise unless the property remains otherwise undisposed of.

(3) An implication may be rebutted by another implication equally strong.

(4) There must be so strong a probability of intention that an intention contrary to that imputed to the testator cannot be supposed.

(5) The language relied on to support the implied gift must be clear, and the implication must be a necessary one to carry out a plainly expressed intention.

(6) An erroneous recital in another part of the will that something has been done may add weight to the implication, but (a) where the erroneous recital refers to the estate created by another instrument, such recital cannot operate to create an estate by implication, and (b) it must clearly appear that the erroneous recital does not refer to any gift antecedently made.

A late expression of the prevailing rule is found in Schouler, Wills (6th Ed.) 1926 Supp. par. 878, in the following language:

"A devise or bequest to a certain person may arise by implication, but implications are not favored. To warrant the finding of a devise or bequest or of an estate by implication, the devise or bequest or estate must be absolutely necessary to carry out the intention of the testator and the implication must be so strong that an intention contrary to that imputed to the testator cannot be presumed to have existed in his mind. The implication must result from the wording of the will and must be so necessary as to leave no hesitation in the mind, and permit no inferences."

The only Texas case directly in point is McCown v. Owens, 15 Tex. Civ. App. 346, 40 S. W. 336, writ denied. In that case the testator left a wife surviving him, but no children. His property was all community. The will provided, after appointment of executors, directing payment of debts and disposing of certain personalty, as follows:

"The balance of the property, being community, I direct shall go according to law, except my sister Tirzah Birdwell, having no children, and being well to do, shall be excluded from any share in my estate."

The brothers and sisters of testator other than Tirzah Birdwell brought suit, claiming a devise by implication of the testator's half of the community to them. The court, after deciding that, according to the then existing law, the surviving wife took the entire estate, speaking through Judge Williams, said:

"After this was done, the testator was content to leave the disposition of the community property to the law, provided that none of it should go to the sister named. The fact that this sister is named in the will is relied on as evidencing the intention of the testator to devise his estate to the brothers and sisters not named. We think it is enough to stop speculation by the court that no such intention is expressed. Of course, the intention of the testator must govern, but by this is meant an intention expressed in the will. It may be ascertained by construction of doubtful terms and provisions, but it must nevertheless appear from the language used in the will. The intention here is plainly expressed that the estate shall go according to law. At the same time it is provided that Mrs. Birdwell shall receive no part of it. If it be admitted that this was a useless provision, it could not be held to overcome the other direction. One of three states of mind must be imputed to the testator, viz.: First, he knew that the descent would be cast upon the widow; or, second, he believed that

it would be cast upon his blood kindred; or, third, he had no knowledge or opinion on the subject. Whatever be the assumption made, he contented himself with leaving the disposition of the property to the law. If he knew it would thus go to his wife, he intended that it should. If he believed that it would go to his brothers and sisters, he made no provision that it should go to them contrary to the law; and the court cannot know what direction he would have given had he possessed better information. If he had no belief upon the subject, he was nevertheless willing that the law, whatever it might be, should control. The exclusion of Mrs. Birdwell is not inconsistent with either assumption. Under the first, the testator might have died after his wife did, in which case there would have been necessity for this provision of the will. We cannot assume that he knew that his wife would survive him. The fact that he died within a few days after the execution of the will does not prove that he did. Her death was an event which would happen in the future, and he could not know when it would take place. It is not uncommon to provide in wills for conditions that are not expected to arise. Under the second, it would follow that the testator so excluded Mrs. Birdwell because he thought the law would devolve the estate upon his brothers and sisters, but, as he does not by the will bequeath to them, without the aid of the law, it does not follow that he would have done so had he known the law to be otherwise than he supposed it to be. The court cannot so assume without striking out the positive direction that the property should go according to law, and inserting another which the will does not contain. Under the third assumption, the exclusion of Mrs. Birdwell would be explained as inserted out of abundant caution, in the testator's ignorance of the course the property might take under the law. * * * In no view that can be taken do the plaintiffs show a right to any portion of the property. The general demurrer was properly sustained. Affirmed."

The general rule is well stated in 28 Ruling Case Law, Wills, § 206, as follows:

"But an express bequest or devise cannot be cut down by a subsequent clause of doubtful meaning and an estate granted in plain and unequivocal language in one clause of a will therefore cannot be lessened or cut down by a subsequent clause, unless the language therein is as clear, plain and unequivocal as that in the first grant."

In 40 Cyc., Wills, pp. 14, 15, 16, the author says:

"But a clearly expressed intention in one part of the will cannot be controlled by a doubtful construction in another part. Thus a clear gift in one clause cannot be taken away or cut down by doubtful expressions in another clause, but only by expressed words or by clear implication and a repugnant restriction or remainder after an absolute gift may be held void."

In Shouler, Wills (6th Ed.) 1926 Supp. par. 900, the following is said:

"And in carrying out the intent of the testator, the general rule is that when an interest is clearly and expressly given in one clause of a

will, the devise or bequest will not be deemed taken away or diminished by subsequent words unless they are equally clear and decisive of the testator's intention. The theory is that where a testator positively makes a certain devise or bequest there can be no intent in his mind to take it way or cut it down."

And again in paragraph 1188:

"The general rule is that, where a testator positively makes a certain devise or bequest, the devise or bequest will not be deemed limited or diminished by subsequent words unless they are equally clear and decisive. * * * It follows that where there is an unqualified devise of real property by language sufficient to pass the fee in the property, interest of the devisee or devisees will not be deemed to be cut down by a subsequent clause in the will into an inferior estate unless the subsequent clause is creating the fee in the first instance. Ambiguous words or doubtful expressions will not be held to diminish a fee estate unequivocally created in a previous clause in a will."

To the same effect are 3 Thompson, Real Property, § 2192; 1 Tiffany, Real Property (2d Ed.) p. 77; 2 Alexander's Commentaries on Wills, § 932; 4 Underhill, Law on Wills, p. 487.

In Gilliam v. Mahon (Tex. Com. App.) 231 S. W. 712, the facts were that Mahon died leaving a will, the main provisions of which were as follows:

"I give and bequeath to my wife, Alice A. Mahon, all my real and personal property. * * * All debts to be paid, also my granddaughter, Mittie Mahon, to have equal share with all my heirs when the property is divided."

The suit was brought by Mittie Mahon and the heirs of her class to have the will construed to the effect that the same gave the surviving wife only a life estate. The lower court entered a judgment vesting title to the property in the surviving wife. The court of Civil Appeals reversed this judgment, and rendered judgment vesting in the surviving wife only a life estate. The Commission of Appeals, Section B, after stating the above facts, said:

"The rule referred to can be correctly and more fully phrased as follows:

"'Where the first clause of a will in clear, unambiguous language gives and bequeaths to one devisee all the property real and personal of which the testator dies possessed, such estate so given cannot be disturbed, cut down, or diminished by a subsequent clause, which is uncertain and ambiguous in its meaning.'

"That rule of law has been long established and applied. Careful examination of the cases of McMurry v. Stanley, 69 Tex. 227, 6 S. W. 412, and Dulin v. Moore, 96 Tex. 135, 70 S. W. 742, which are strongly relied upon by defendants in error, reveals that the clause of the will in each case which was held to limit the devises was clear, direct, and unambiguous, and left no doubt as to the intention and desire of the testator, which was, under the terms of the instrument, capable of being practically carried out.

"Such is the nature and effect of the first clause of the will of S. A. Mahon, which, in clear and unambiguous terms, vested an estate in fee in his wife in all his property. The clause referring to the granddaughter is secondary only. Were it as clear as the first it would be our duty to reconcile the two, but in view of its ambiguous character the primary clause cannot be affected by it.

"If the second clause were given effect the result would be to incorporate all of the heirs of the testator as beneficiaries, though there is no direct intimation on the part of the testator that they were to share, and though they are wholly unmentioned or referred to as beneficiaries under the will. This being true, the rule applicable to the situation forbids such a construction, and demands that the will be construed as vesting an estate in fee to all the property in the wife, provision for whom appears to have been the primary and controlling purpose of the testator, and as to whom only did he express his intention in clear and effectual legal terms."

Numerous other authorities with quotations therefrom are to be found in appellee's brief, which are especially clear and to the point, but we think those cited by us and from which we have quoted sufficiently illustrate the rules proper for application, and in harmony with those rules we conclude that the plaintiff's petition fails to show any vested interest either by inheritance or by conveyance in the land in controversy, and that hence the court properly sustained the general demurrer.

The conclusion so stated renders it unnecessary for us to consider the further questions raised or mooted by appellant relating to alleged defects in the title of the city, and to what extent, if at all, appellant, under the rules of equity, would be entitled to relief, in event it appeared that he had a vested interest, direct or contingent, in the title.

The judgment is affirmed.

### On Motion for Rehearing.

Appellant complains of the omission in our original opinion of specified parts of his petition which, as alleged, is thought to be material in the construction of the will under consideration, and which, if included in our statement of the case, would perhaps lead to a conclusion different from that announced in our opinion. Complaint is also made of some of our references to appellee's brief and to the admission of the parties on hearing. As to these objections, we will state that appellant's petition, to which the court below sustained a general demurrer, covers some twelve pages of the transcript, and an inclusion of the whole in an opinion would be, we think, impractical and unnecessary. We thought it only necessary to copy such portions of the petition, and to refer to such averments, as we concluded would sufficiently indicate its effect, but, if we have inadvert-

4 S.W.(2d)—18

ently, or through any misconception, omitted any part of the original petition material to a consideration of the question involved we cannot see that it will operate to the injury of appellant, inasmuch as the entire petition as well as other parts of the record, will be before the court clothed with jurisdiction to correct our errors.

As to other matters discussed in the motion we can but think, as we endeavored to express in our original opinion, that appellant's petition as a whole on its face fails to show any such vested or contingent interest in the lands described in the petition as entitles him to the relief sought. In 40 Cyc. p. 1846, par. 2, it is said:

"A court of equity will not take jurisdiction of a suit for the construction of a will unless it can afford immediate relief. It will not undertake, where there is no matter in dispute, to declare future rights, nor will it ever undertake to decide upon and determine contingencies which may never arise, unless such determination is necessary for the decision of some immediate relief to be granted, and which it can enforce by a decree. Such a suit may sometimes be entertained, however, where it is brought by an executor or a testamentary trustee, although a like suit by other parties would be dismissed as premature. Inasmuch as a premature adjudication is not binding, the court of its own motion will investigate the question whether the purpose of the suit is merely to obtain a declaration of future rights, even though all the parties desire to have the will construed. The jurisdiction of courts of equity in respect to testamentary construction will never be exercised for the purpose of determining hypothetical, abstract, or moot questions."

On page 1847 of 40 Cyc., it is further said:

"It is clear on principle that a suit to construe a will cannot be brought by a person who has no personal interest in the property disposed of or in the construction of the will, and who may never have any such interest."

As we interpret appellant's petition, the only possible right by virtue of which a court of equity could award the relief sought is that of a remainderman. In Black's Law Dictionary (2d Ed.) p. 1013, an estate in remainder is said to be:

"The remnant of an estate in land, depending upon a particular prior estate created at the same time and by the same instrument, and limited to arise immediately on the determination of that estate, and not in abridgment of it. 4 Kent, Comm. 197."

In 2 Blackstone, 164, it is thus defined:

"An estate which is limited to take effect and be enjoyed after another estate is determined. As, if a man seised in fee-simple grants lands to A. for twenty years, and, after the determination of the said term, then to B. and his heirs forever, here A. is tenant for years, remainder to B. in fee."

The case of Anderson v. Menefee (Tex. Civ. App.) 174 S. W. 904, involved the construc-

tion of a will. We had occasion to quote the following from Mr. Gray in his work on Perpetuities on page 5, thus defining the distinction between a vested and a contingent remainder:

"A remainder is vested if, at every moment during its continuance it is ready to come into possession, whenever and however the preceding estates determine. A remainder is contingent if, and in order for it to come into possession, the fulfillment of some condition precedent, other than the determination of the preceding estates, is necessary."

In Thornton v. Zea, 22 Tex. Civ. App. 509, 55 S. W. 798, by the San Antonio Court of Civil Appeals, in the opinion by the lamented Neill, Associate Justice, it is said:

"Estates are vested when there is a person in being who would have an immediate right to the possession of the lands upon the ceasing of the intermediate or precedent estate. They are contingent while the person to whom, or the event upon which, they are limited to take effect remains uncertain."

In 40 Cyc. p. 1664, it is said:

"Remainders created by will may be either vested or contingent. A vested remainder is a remainder limited to a certain person and on a certain event, so as to possess a present capacity to take effect in possession should the possession become vacant; while a contingent remainder is a remainder limited to an uncertain person or on an uncertain event, or so limited to a certain person and on a certain event as not to possess the present capacity to take effect in possession should the possession become vacant. * * * The chief characteristic which distinguishes a vested from a contingent remainder is the present capacity to take effect in possession should the possession become vacant, and the certainty that the event upon which the vacancy depends will happen some time, and not upon the certainty that it will happen or the possession become vacant during the lifetime of the remainderman. In case of a vested remainder, there is a person in being ascertained and ready to take, who has a present right of future enjoyment, which is not dependent upon any uncertain event or contingency, while in the case of a contingent remainder the right itself is uncertain. The uncertainty, therefore, which distinguishes a contingent remainder is the uncertainty of the right and not the actual enjoyment."

On page 1682 of 40 Cyc., par. IV, it is said:

"A contingent remainder fails where it cannot take effect on the termination of the life estate. A contingent estate in favor of an unborn beneficiary does not fail until it becomes incapable of taking effect by the termination of the event or time prescribed since the possibility of issue is, in contemplation of law, extinguished only with life."

[6] Under the rules so given, it appears to us, in addition to the reasons given in our original opinion, that plaintiff's petition fails to exhibit any vested or contingent estate in the lands involved which will authorize a court of law or equity to award to appellant the relief prayed for in his petition.

The motion for rehearing is accordingly overruled.