**In the Matter of the ESTATE OF Helen HODGES, Deceased.**

**No. 07–84–0118–CV.**

Court of Appeals of Texas, Amarillo.

Nov. 18, 1986.

Rehearing Denied Dec. 12, 1986.

D. Thomas Johnson, McWhorter, Cobb & Johnson, James A. Walters, Robert St. Clair, Walters & Associates, Walker Metcalf, Lubbock, for appellants.

Donald M. Hunt, Latrelle B. Joy, Carr, Evans, Fouts & Hunt, Lubbock, for appellee.

Before DODSON, COUNTISS and BOYD, JJ.

COUNTISS, Justice.

This is an estate case involving a family settlement agreement. The initial, and in our opinion determinative, question is whether a person named as independent executor by the decedent has standing to object to a family settlement agreement. The trial court said he did not, approved the family settlement agreement and admitted the will to probate for limited pur-

poses. We have concluded that the trial court was correct; consequently, we affirm the judgment.

The late Helen Hodges died testate in 1981. Under her will, the last of 13 she executed during her life, she bequeathed her estate to grandson Jesse Allen Lanehart, daughter Nancy Marie Hughes, the Arthritis Foundation and the Helen Hodges Educational Charitable Trust. She specifically disinherited her other daughter, Edith Helen Shobe, and ordered her executor and her other heirs to vigorously oppose any attempt by Mrs. Shobe to void her will. She also ordered the disinheritance of any beneficiary who initiated any attack on the will.

Mrs. Hodges named Vergil Craig as independent executor and appellant Max Dreasher, Jr., as alternate independent executor. She also directed the manner in which her executor was to be compensated.

Soon after Mrs. Hodges' death, Craig filed the will for probate. Disinherited daughter Shobe immediately filed a will contest, contending her mother was incompetent and the victim of undue influence. Craig was appointed temporary administrator pending resolution of the will contest and, when he died before resolution of the case, daughter Hughes was appointed to succeed him in the temporary capacity and appellant Dreasher filed a request for appointment as independent executor.

After two years and extensive preparation, the will contest initiated by Shobe was ready for trial. On the eve of trial, however, sisters Shobe and Hughes and all of the beneficiaries named in the will settled their differences and entered into a family settlement agreement. Under the agreement, Shobe was given a percentage of her mother's estate plus some specific items and various beneficiaries gave up part of their devise. Provisions were also made in the agreement for payment of estate creditors and the transaction of estate business.

Appellant Dreasher objected to the agreement, insisting that the will be probated and that he be appointed independent executor. The trial court ruled, however, that Dreasher had no standing to object to the family settlement agreement and refused to consider his protests. It then approved the family settlement agreement and ordered the will admitted to probate for certain limited purposes.

In this Court Dreasher attacks the trial court judgment by eight points of error. The determinative question, raised by his third point of error, is whether he has standing to object to the family settlement agreement. Consequently, we will resolve that issue first.

■ A family settlement agreement is an alternative method of administration in Texas that is a favorite of the law. *Salmon v. Salmon*, 395 S.W.2d 29, 32 (Tex. 1965); *Estate of Morris*, 577 S.W.2d 748, 755–56 (Tex.Civ.App.—Amarillo 1979, writ ref'd n.r.e.). The theory underlying the validity of family settlement is stated in *Pitner v. United States*, 388 F.2d 651, 656 (5th Cir.1967):

> This approach is made possible by section 37 of the [Texas] Probate Code which provides that when a person dies leaving a will, [...] "all of his estate devised or bequeathed by such will shall vest immediately in the devisees or legatees;" [...] subject to the payment of the decedent's debts. This provision leaves the beneficiaries of an estate free to arrange among themselves for the distribution of the estate and for the payment of expenses from that estate.[1]

Thus, when Helen Hodges died, her property vested immediately in the devisees named in her will. Because the property became theirs instantly, the family settlement doctrine permitted the devisees to agree to divide the property as they wished without having to wait until after distribution through formal administration.

---

1. As pertinent here, Section 37 now states:
   "When a person dies, leaving a lawful will, all of his estate devised or bequeathed by such will, and all powers of appointment granted in such will, shall vest immediately in the devisees or legatees of such estate and the donees of such powers; ..."
   Tex.Prob. Code Ann. § 37 (Vernon Supp.1986).

At the outset, we observe that Dreasher's contention that he has standing to object to the family settlement agreement contradicts a decision of this Court. In *Biddy v. Jones*, 475 S.W.2d 321, 323 (Tex. Civ.App.—Amarillo 1971, writ ref'd n.r.e.), we held that an executor who has no interest in property devised under a will, other than his mere nomination as executor, does not have sufficient interest in the estate to be classified a "person interested", Tex. Prob. Code Ann. § 3(r) (Vernon 1980), and therefore is not entitled to insist that a will be probated in the face of a valid family settlement agreement. That holding is inapplicable, says Dreasher, because the will imposes a duty on him, through the forfeiture clause to enforce its terms and because he was given specific bequests under the will. Thus, we must ascertain whether there are factual or legal differences here that compel a different result.

Mrs. Hodges' will contained a forfeiture clause that stated, as pertinent here:

> In the event any devisee ... should directly or indirectly attack, question or contest any provision of this will ... such devisee ... who otherwise might be entitled to an interest hereunder, or by law, shall receive no part or portion hereunder, or by law, and shall forfeit such interest such person would otherwise be entitled to hereunder and/or any gift made hereunder to such person will lapse.

This clause was activated, says Dreasher, because the devisees filed this declaratory judgment suit.

■ Forfeiture provisions in a will are to be strictly construed and forfeiture is to be avoided if possible; only where the acts of the parties come strictly within the clause may a breach thereof be declared. *Sheffield v. Scott*, 662 S.W.2d 674, 676 (Tex.App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.). Applying those principles, we conclude that a declaratory judgment suit that, among other things, asks the court to decide whether a family settlement agreement would cause a forfeiture, is a request for construction of the will, not an attack on the will. As such, it does not activate

the forfeiture clause and Dreasher has no duties to perform under that clause.

■ There is a second reason why the forfeiture clause does not demand action by Dreasher. If the interests of the beneficiaries were forfeited because they filed the petition for declaratory judgment, the estate would then pass by intestate succession to Mrs. Hodges' two daughters, Nancy Hughes and Edith Shobe. Mrs. Hodges cannot, by providing in the forfeiture clause that an heir shall not inherit by law, if the heir contests the will, repeal the laws of intestacy. *See Adams v. Masterson*, 415 S.W.2d 535, 536 (Tex.Civ.App.—Dallas 1967, writ ref'd n.r.e.). After forfeiture and upon inheritance, *Estate of Self*, 591 S.W.2d 338 (Tex.Civ.App.—Tyler 1979, no writ), the two daughters would be contractually bound to distribute the estate in accordance with the family settlement agreement. Thus, a forfeiture under the clause in question would have no practical effect.

■ Appellant next argues that he has standing because he was given a pecuniary interest under either the executor's compensation clause or a clause directing the estate accountant to retain any excess left after paying for permissible legal and accounting services performed for the estate. The executor's clause states:

> I provide that said VERGIL CRAIG shall be paid at least one percent (1%) of the gross value of my estate for serving as Independent Executor. In the event that an Alternate Independent Executor shall serve hereunder as an alternate, he shall receive only the compensation that the person he succeeds otherwise would receive and no more.

It is immediately apparent that the provision giving 1% of the gross estate to the executor requires the executor to serve in order to earn the fee. Here, Dreasher has not served, and there is no need for him to do so because all duties he would perform are covered by the family settlement agreement. We find no Texas cases directly on point on this issue, but several out of state cases with which we agree hold that an executor must render services in order to be paid. *McMahon v. Krapf*, 323 Mass.

118, 80 N.E.2d 314 (1948); *In re Cherkoff's Will*, 189 N.Y.S.2d 530, 9 A.D.2d 557 (1959); *In re Haggerty's Estate*, 70 O.L.A. 463, 128 N.E.2d 680 (Ohio P.Ct.1955); *Leahy v. Mercantile Trust Co.*, 296 Mo. 561, 247 S.W. 396 (1922).

The second clause, under which Dreasher claims 3% of the gross estate, says as pertinent here:

> I hereby authorize and direct that my Executor be authorized to employ Vergil Craig for the purpose of performing all or any portion of the tax services that may be necessary in connection with my estate. Said Vergil Craig shall be authorized to set aside a maximum three percent (3%) of the gross value of my estate for the purpose of paying (a) a reasonable attorney's fee to an attorney chosen by said Vergil Craig to represent the estate and perform all necessary legal services and (b) for the purpose of paying for all tax services related to the preparation of an estate tax return and an inheritance tax return and any other tax or legal services needed. It is my desire and intent that Vergil Craig or his alternate shall set aside the maximum figures of three percent (3%) of my gross estate for the purposes above mentioned in this paragraph. In the event after entering into a contract or contracts with an attorney of his own choosing, and there is an excess left after paying said attorney a reasonable fee and after compensating himself for his tax services furnished, any excess may be retained by said Vergil Craig or his alternate.

Initially we observe that this paragraph, like the 1% paragraph, requires services in exchange for compensation. Because the family settlement agreement obviates the need for the services called for by the clause, the compensation need not be paid.

▇ Additionally, we agree with appellees' argument that the clause does not apply to Dreasher as the executor-apparent. It is obvious from careful reading of the clause that in the two instances where Mrs. Hodges mentions Vergil Craig's alternate, she is referring to an alternate accountant, not to an alternate executor.

The first sentence of the clause directs her executor to employ Vergil Craig as accountant for the estate. All references to Vergil Craig after that point refer to him in his capacity as an accountant. The instruction to set aside 3% of the gross value of the estate and retain any excess after paying attorney's and accountant's fees is directed to the accountant or his alternate and not to the executor or his alternate. Thus, Dreasher is not given any pecuniary interest under the will and has no standing to oppose the family settlement agreement. *Biddy v. Jones, supra.* Likewise, since he is not a beneficiary under the will he is not a necessary party to the settlement agreement. *Estate of Morris*, 577 S.W.2d at 755.

▇ Finally, as appellees also point out, a gift to Dreasher under the clause could only be a gift by implication. Such gifts are not favored in this state, and require a probability so strong that a contrary intention cannot be supposed. *Najvar v. Vasek*, 564 S.W.2d 202, 210 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.); *Neinast v. Brauckmuller*, 401 S.W.2d 113, 116 (Tex. Civ.App.—Houston 1966, no writ); *Gallagher v. O'Brien*, 158 S.W.2d 345, 347 (Tex. Civ.App.—San Antonio 1941, no writ); *Gay v. City of Fort Worth*, 4 S.W.2d 268, 271 (Tex.Civ.App.—Fort Worth 1928, writ dism'd). Certainly the language in question here does not meet that test.

Dreasher points to the recent Texas Supreme Court opinion in *Kelley v. Marlin*, 714 S.W.2d 303 (Tex.1986) as authority supporting his arguments under the 1% and 3% clauses. In *Kelley*, the will stated: "Bill Marlin is to be the exclusive real estate agent (6% commission) for the sale by my wife of any of the real estate passing to her hereunder and he shall have a right against the sales proceeds to her to collect that commission." *Id.* at 305. Marlin sued after the executor sold estate lands through another realtor and failed to pay a commission to Marlin. The Supreme Court held that Marlin was a conditional beneficiary and his interest was an equitable charge upon the land if it was sold. Be-

cause the land was sold, he was entitled to the six percent commission.

We do not perceive a conflict between *Kelley* and our conclusions. Marlin's beneficial rights matured when, and only when, the land sold. Dreasher's rights here would have matured if he had performed as an executor. Because he did not, and will not under the family settlement agreement, he has no standing in this matter. Point of error three is overruled.

The conclusions reached in disposing of point three are also fatal to point five, by which Dreasher argues that he was a necessary party to the settlement agreement, and point eight, by which he again argues that the forfeiture clause was activated; consequently, points of error five and eight are also overruled.

We will resolve on its merits Dreasher's first point, because it too addresses his standing. By the point, Dreasher says that the trial court's judgment admitted the will to probate; therefore, he argues, he was entitled as a matter of law to be issued letters testamentary regardless of the need for an administration.

Section 89 of the Probate Code states, as pertinent here:

> Probate of Wills as Muniments of Title. In each instance where the Court is satisfied that a will should be admitted to probate, and where the Court is further satisfied that there are no unpaid debts owing by the estate of the testator, excluding debts secured by liens on real estate, or for other reason finds that there is no necessity for administration upon such estate, the Court may admit such will to probate as a Muniment of Title.

> The order admitting a will to probate as a Muniment of Title shall constitute sufficient legal authority to all persons owing any money, having custody of any property, or acting as registrar or transfer agent of any evidence of interest, indebtedness, property, or right belonging to the estate, and to persons purchas-

ing from or otherwise dealing with the estate, for payment or transfer to the persons described in such will as entitled to receive the particular asset without administration. The person or persons entitled to property under the provisions of such wills shall be entitled to deal and treat with the properties to which they are so entitled in the same manner as if the record of title thereof were vested in their names.[2]

Tex.Prob. Code Ann. § 89 (Vernon 1980).

█ The section gives a court discretion to admit a will to probate as a muniment of title when it finds there are no unpaid debts or "for other reason finds that there is no necessity for administration." *See Washington v. Law,* 519 S.W.2d 953, 954 (Tex.Civ.App.—Houston [14th Dist.] 1975, writ ref'd n.r.e.).

The trial court judgment tracked the quoted language of section 89. After stating that the will was "admitted to probate" and partitioning the estate in accordance with the family settlement agreement, the court said:

> The clerk of this Court is ordered to record the will, together with the application for probate and the testimony given in these proceedings, in the minutes of this Court. This order shall constitute sufficient legal authority to all persons owing any money, having custody of any property or acting as registrar or transfer agent of any evidence of interest, indebtedness, property, or right belonging to the estate of HELEN HODGES, Deceased, and to persons purchasing from or otherwise dealing with the estate, for payment or transfer to the persons set forth in this judgment as entitled to receive a particular asset without administration. The persons entitled to property under the terms and provisions of the Settlement Agreement and under the terms and provisions of this Judgment shall be entitled to deal with the properties to which they are so entitled in the same manner as if the record of

**2.** The statute is quoted as it read at the time of trial. It has since been amended. *See* Tex.

Prob. Code Ann. § 89 (Vernon Supp.1986).

title of those properties were vested in their names.

Although the court did not specifically state that it was admitting the will to probate as a muniment of title, that was obviously the court's intent. That is also the legal effect of the order. It was within the trial court's statutory authority to admit the will as a muniment under that phrase in § 89 that permits such action if the court "for other reason" finds no necessity for administration. Obviously the family settlement agreement was the "other reason." We conclude, therefore, that the will was admitted to probate as a muniment of title.

From that conclusion, it follows that letters testamentary cannot issue to Dreasher. The purpose of the limited form of probate employed here is to provide continuity in the chain of title to estate properties by placing the will on the public record. Admitting the will for such limited purposes vests the named executor with neither duty nor authority. Consequently, no reason exists to issue letters to him. That fact distinguishes the various cases upon which Dreasher relies. Point of error one is overruled.

Dreasher's remaining points of error go to matters he lacks authority to litigate. Therefore, they are also overruled. We also observe that Jan Dreasher, wife of appellant Max Dreasher, Jr., has filed a brief raising a point of error. However, Mrs. Dreasher did not perfect an appeal to this Court and we cannot consider her brief.

The judgment is affirmed.