Nancy Rodriguez **FUENTES,** Appellant,

v.

**TRANSAMERICAN NATURAL GAS CORPORATION; Southwest Texas Services, Inc.; L.T.V. Energy Products d/b/a Wilson Manufacturing; Continental Emsco Company d/b/a Wilson Manufacturing; Wilson–Wichita, Inc. d/b/a Wilson Manufacturing; and Dana Corporation, Appellees.**

No. 04–94–00490–CV.

Court of Appeals of Texas, San Antonio.

Aug. 30, 1996.

Rehearing Overruled Oct. 24, 1996.

Arnulfo Gonzalez, Jr., James K. Jones, Jr., Alicia C. Finley Richter, Mann, Jones & Gonzalez, L.L.P., Laredo, for appellant.

Michael V. Powell, David G. McCracken, Locke, Purnell, Rain & Harrell, P.C., Dallas, Allister M. Waldrop, Michael H. Smith, Baker & Botts, L.L.P., Houston, Charles R. Borchers, Person, Whitworth, Ramos, Borchers & Morales, Laredo, Allan R. King, Barker & King, L.L.P., Corpus Christi, Pamela Redd, Hughes, Watters & Askanase, Robert H. Etnyre, Jr., Royston, Razor, Vickery & Williams, Houston, for appellees.

Before RICKHOFF, LÓPEZ and HARDBERGER, JJ.

## OPINION

HARDBERGER, Justice.

This appeal presents the issue of whether the former requirement in the Family Code, that a declaration of common-law marriage must be made within one year, replaces the wrongful death two-year statute of limitations. This is an appeal from a final summary judgment granted against Nancy Rodriguez Fuentes in an action under the Wrongful Death Act. Fuentes filed this action as the common-law wife of Julio Fuentes, who was killed in a drilling rig accident. The trial court granted the summary judgment holding that Nancy Fuentes' claims were time-barred because she had not filed her declaration of common-law marriage within one year pursuant to former Family Code Section 1.91(b). Fuentes appeals from that judgment.

On October 16, 1991, Julio Fuentes was killed when the upper section of the drilling rig he was working on collapsed. At the time, Julio Fuentes was employed by appellee, Transamerican Gas Corporation. On October 15, 1993, one day less than two years after Julio Fuentes' death, Nancy Fuentes filed suit under the Wrongful Death Act as his common-law wife against Continental EMSCO Company, a/k/a L.T.V. Energy Products; Dana Corporation; and Wilson-Wichita, Inc. Nancy also filed suit for gross negligence pursuant to the Workers' Compensation Act against Transamerican Natural Gas Corporation, and Southwest Texas Services, Inc. again claiming to be Julio's common-law spouse.

TransAmerican and Southwest Texas moved for summary judgment under the one-year statute of limitations of TEX. FAM.CODE ANN. § 1.91(b)(Vernon 1993) for claiming a common-law marriage. Continental Emsco filed a similar motion and the other appellees also joined in the motions. The trial court granted the defendant's motions for summary judgment on April 13, 1994 and severed Nancy's claims against the movants and entered final judgment in the severed actions on May 3, 1994. Nancy has claims against several other defendants still pending in the trial court.

It is undisputed that Nancy Fuentes and Julio Fuentes were never ceremonially married. They never filed a declaration of a marriage without formalities as authorized by Section 1.91(a)(2) of the Family Code. Nancy Fuentes never filed a declaration of marriage within one year of Julio Fuentes' death.

Nancy testified that she and Julio agreed to be married sometime in November 1989, and that they lived together from 1989 until his death. She testified that Julio lived in her mother's home with her during that time period. She also testified that Julio ate his meals at her home, took care of his clothes at this home and used Nancy's mother's car, and gave Nancy's mother his entire monthly earnings of $1,200.00. In August of 1991, Nancy testified that she and Julio moved to her brother's home to make room for Nancy's sister and her six children. They remained there until Julio was killed. Nancy also stated that she and Julio referred to each other as husband and wife.

There is some contrary evidence as to the common-law marriage. Both Nancy and Julio continued to represent themselves as single on their federal income tax returns, and Nancy represented herself as single in order to continue to qualify for student financial aid. Nancy did not use Julio's surname until after his death.

In her first point of error, Nancy alleges that the trial court erred in granting the motion for summary judgment because Texas Family Code § 1.91(b) should not be applied to benefit a tortfeasor. The basis for the trial court's summary judgment was that

Nancy had failed to bring this suit within one year of Julio's death pursuant to the former family code provision regulating common-law marriage. *See* TEX. FAM.CODE ANN. § 1.91(b)(Vernon 1989). It is undisputed that Nancy brought this lawsuit for recovery under the Texas Wrongful Death Act within the applicable two year statute of limitations. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 16.003(b) (Vernon 1986). The issue is whether the requirements of former Texas Family Code § 1.91(b) are to be engrafted onto Texas Civil Practice and Remedies Code section 16.003(b). That is, do the Family Code requirements of former section 1.91(b) effectively negate the normal two-year statute of limitations for wrongful death actions?

Transamerican relies on the following section of the Texas Family Code:

Section 1.91. Proof of Certain Informal Marriages.

(a) in any judicial, administrative, or other proceeding, the marriage of a man and a woman may be proved by evidence that:

(1) a declaration of their marriage has been executed under Section 1.92 of this code; or

(2) they agreed to be married, and after the agreement they lived together in this state as husband and wife and there represented to others that they were married.

(b) A proceeding in which a marriage is to be proved under this section must be commenced not later than one year after the date on which the relationship ended or not later than one year after September 1, 1989, whichever is later.

Family Code § 1.91(b) was amended, effective September 1, 1995, and currently provides:

(b) If a proceeding in which a marriage is to be proved under Subsection (a)(2) is not commenced before the second anniversary of the date on which the parties separated and ceased living together, it is rebuttably presumed that the parties did not enter into an agreement to be married.

Amended by 74th Legis., Reg. Sess. (1995), H.B. 336, eff. Sept. 1, 1995. If this amendment had been in effect on the date this case was filed this appeal would not be before us. Clearly, this amendment to Section 1.91(b) resolves the confusion created by the 1989 amendment which is reflected in the parties positions in this appeal. As a result of the 1995 amendment, the issue presented in this appeal is unlikely to reoccur. However, we must resolve the issue before us which stems from the version in effect at the time this suit was filed.

No published opinions have directly addressed this issue. However, we may look for guidance to two Texas Supreme Court cases which involved similar issues. *See Garza v. Maverick Market, Inc.*, 768 S.W.2d 273, 275 (Tex.1989); *Brown v. Edwards Transfer Co.*, 764 S.W.2d 220, 222–23 (Tex. 1988). These two cases both address the issue of whether the legitimation requirements of the Texas Probate Code and the Texas Family Code should be engrafted onto the Wrongful Death Act. In both opinions the supreme court held that those provisions of the Family Code and Probate Code should not be engrafted onto the Wrongful Death Act. We find the following language in *Garza* to be particularly applicable:

Similarly, in our present case it is inappropriate to incorporate the requirements of legitimation under the Family Code into the Wrongful Death Act. The two bodies of law are simply too disparate in application for such combination. The obvious purpose of chapter 13 of the Family Code is to protect the rights of mothers and putative fathers, and to serve the best interests of the child. The text of that chapter shows that it was neither designed or even intended to address tort actions; nor was it designed to protect tortfeasors. The equally obvious purpose of the Wrongful Death Act, on the other hand, is to provide a means whereby surviving spouses, children, and parents can recover for the loss of a family member by wrongful death. Absent any indication by the legislature that it intended the legitimation provisions of the Family Code to apply to the Wrongful Death Act, we will not make that application ourselves.

*Garza v. Maverick Market, Inc.,* 768 S.W.2d at 275.

Likewise, in this case it would be wrong to incorporate the repealed one-year limitation provision for proving a common-law marriage into the Wrongful Death Act. As the court said in *Garza,* "the two bodies of law are simply too disparate in application for such combination." *Id.* The text of Chapter 1 of the Family Code shows that it was neither designed or intended to address tort actions. The purpose of this section of the Family Code is to regulate common-law marriages. The purpose of Chapter 1 of the Family Code is not to provide an abbreviated statute of limitations in order to protect tortfeasors. The purpose of the Wrongful Death Act is to "provide a means whereby surviving spouses, children, and parents can recover for the loss of a family member by wrongful death."

In another case concerning the right of illegitimate children to recover pursuant to the wrongful death act, the supreme court said that "wrongful death benefits attach to those who suffer injury as a result of the death ..." *Brown v. Edwards Transfer Co., Inc.,* 764 S.W.2d 220, 223 (Tex.1988). The court went on to say that "section 71.010 of the (Wrongful Death) Act expressly provides for the division of damages to be determined by the jury, not by descent and distribution laws." *Id.* Likewise, in our case, the determination of whether Nancy is the surviving spouse of Julio should be left to the jury to decide and should not be cut-off by a one-year statute of limitations which is directly contrary to the legislatively mandated two-year statute of limitations for Wrongful Death Actions.

Therefore, we hold that the one-year statute of limitations contained in the former section 1.91(b) of the Family Code should not supplant the Wrongful Death Act's two-year statute of limitations when common-law spouses seek recovery pursuant to the Act. We sustain Fuentes' first point of error. We reverse and remand this cause to the trial court for further proceedings.

The judgment is reversed and remanded.

RICKOFF, Justice, concurring.

Because the legislature failed to make clear whether the Family Code's one year limitation supplanted the Wrongful Death Act's two year limitations period, I believe the majority has correctly addressed the determinative issue in the instant case. I do not agree, however, with the majority's statement that "the determination of whether Nancy is the surviving spouse of Julio should be left to the jury...."

While I acknowledge that the existence of a common law marriage is generally a question of fact, the facts in certain cases may be such as to permit a trial court to find that a common law marriage does not exist as a matter of law. *See, e.g. Claveria's Estate v. Claveria,* 615 S.W.2d 164, 166 (Tex.1981)(acknowledging in certain instances facts do not establish common law marriage as a matter of law); *Alvarado v. State,* 709 S.W.2d 339, 340 (Tex.App.—Houston [14th Dist.] 1986, pet. ref'd)(parties held not to be married as a matter of law for purposes of invoking privilege against spouse testifying); *January v. State,* 678 S.W.2d 243, 245 (Tex.App.—Corpus Christi 1984, pet. ref'd)(trial court found parties not married as a matter of law). I believe this is such a case.

Following Julio's death, Nancy provided Julio's parents with a written statement in which she attested that Julio and she were "boyfriend and girlfriend" and had no marriage plans. This statement was obtained to assist the parents in their wrongful death action and was consistent with her completion of income tax and student aid forms during Julio's life in which Nancy acknowledged and declared herself to be single. When questioned about these declarations, she candidly admitted in her deposition testimony in the instant case that "we didn't get married.... I was going to go to school and by the money that he was earning, I wouldn't qualify for financial aid." It makes no difference if Nancy is portrayed as guileless or cunning, she repeatedly disavowed the marriage on the most significant documents presented to her.

As a matter of law, I would hold that one cannot both declare to be single and married. One cannot drop in and out of marriage

based on the financial opportunities or advantages that status presents on different days. While one's philosophical construct about marriage may run from considering it sacred, a Sacrament, to a mere matter of brief convenience, the elements under the law remain. I believe therefore, under the facts presented in the instant case, the trial court is free to determine that Nancy was not married as a matter of law.