Richard L. SHEPHERD, M.D., and Allan
Graham, M.D., Petitioners,

v.

Lahoma LEDFORD, Respondent.

TRANSAMERICAN NATURAL GAS COR-
PORATION, Southwest Texas Services,
Inc., L.T.V. Energy Products d/b/a Wil-
son Manufacturing, Continental Emsco
Company d/b/a Wilson Manufacturing,
Wilson–Wichita, Inc. d/b/a Wilson Man-
ufacturing, and Dana Corporation d/b/a
Wilson Manufacturing, Petitioners,

v.

Nancy Rodriguez FUENTES, Respondent.

Nos. 96–0994, 96–1243.

Supreme Court of Texas.

Argued April 23, 1997.

Decided Jan. 29, 1998.

Rehearing Overruled March 13, 1998.

Anthony M. Kuehler, Jennifer M. Andrews, Joseph M. Gallagher, Fort Worth, for Petitioners in No. 96–0994.

David G. McCracken, Allister M. Waldrop, Dallas, Macey Reasoner Stokes, Houston, Michael V. Powell, Dallas, Allan R. King, Corpus Christi, Robert H. Etnyre, Houston, for Petitioners in No. 96–1243.

Margaret I. Henning, Janis M. Calos, William A. Newman, Bruce A. Pauley, Dallas, for Respondent in No. 96–0994.

James K. Jones, Jr., Laredo, Alicia C. Finley–Richter, San Antonio, Arnulfo Gonzalez, Jr., Laredo, for Respondent in No. 96–1243.

BAKER, Justice, delivered the opinion of the Court, in which GONZALEZ, ENOCH, SPECTOR and ABBOTT, Justices, join.

In these two cases we consider whether former Family Code section 1.91(b)[1] conflicts with Medical Liability and Insurance Improvement Act ("MLIIA") section 10.01 or Texas Civil Practice and Remedies Code section 16.003. We hold that section 1.91(b), as it existed before the 1995 amendment, does not conflict with either section 10.01 of the MLIIA or section 16.003 of the Texas Civil Practice and Remedies Code. Accordingly, we affirm the court of appeals' judgment in *Shepherd v. Ledford*,[2] and reverse the court of appeals' judgment in *Transamerican v. Fuentes*.

## I. BACKGROUND

### A. *Shepherd v. Ledford*

*Shepherd v. Ledford* involves a wrongful death and survival claim for medical malprac-

tice. Lahoma Ledford sued Drs. Richard Shepherd and Allan Graham for the wrongful death of her alleged common-law husband, John Ledford. The medical malpractice action resulted from the doctors' treatment of Mr. Ledford for a heart condition. The jury found for Mrs. Ledford on both causes of action. The trial court rendered judgment on the verdict on the wrongful death claim. However, the trial court partially granted the defendants' motion for judgment notwithstanding the verdict on the survival claim.

Affirming the trial court in part, the court of appeals held that section 1.91(b) did not bar Mrs. Ledford's cause of action. The court reasoned that section 1.91(b) conflicted with the medical malpractice two-year statute of limitations for wrongful death in section 10.01 of the MLIIA. The court then determined that section 10.01 supplanted section 1.91(b) of the Family Code and held that Mrs. Ledford had two years to bring a wrongful death action as the decedent's wife. Additionally, the court of appeals reversed the trial court's judgment notwithstanding the verdict on the survival claim. The court of appeals determined that Mrs. Ledford did have standing to assert the survival action on behalf of Mr. Ledford's estate. However, the court of appeals reversed and remanded the case for a new trial because the district judge did not disqualify a biased juror. 926 S.W.2d 405.

### B. *Transamerican v. Fuentes*

*Transamerican v. Fuentes* involves a wrongful death claim for ordinary negligence. On October 15, 1993, Nancy Rodriguez Fuentes filed this wrongful death action as Julio Fuentes's alleged common-law spouse. Mr. Fuentes was killed in a drilling rig accident on October 16, 1991. The trial court granted the defendants' motion for summary judgment, and Mrs. Fuentes appealed. The court of appeals reversed the summary judg-

---

1. All references to section 1.91(b) of the Family Code are to section 1.91(b) as it existed before the 1995 amendments and the 1997 recodification. Although we acknowledge that the issues presented in these two cases are unlikely to reoccur because of the amendment, the apparent conflict between the statutes as it affects these parties and others similarly situated is important to the jurisprudence of the state.

2. While the court in *Shepherd* misapplied section 1.91(b), we affirm its judgment on other grounds.

ment and remanded the case for trial, holding that Mrs. Fuentes had two years to bring a wrongful death action as Mr. Fuentes's common-law wife. 933 S.W.2d 624.

## II. APPLICABLE LAW

### A. Family Code Section 1.91

When Mrs. Ledford and Mrs. Fuentes filed suit, section 1.91 provided that:

(a) In any judicial, administrative, or other proceeding, the marriage of a man and woman may be proved by evidence that:

(1) a declaration of their marriage has been executed under Section 1.92 of this code; or

(2) they agreed to be married, and after the agreement they lived together in this state as husband and wife, and they represented to others that they were married.

(b) A proceeding in which a marriage is to be proved under this section must be commenced not later than one year after the date on which the relationship ended or not later than one year after September 1, 1989, whichever is later.

TEX. FAM.CODE § 1.91(b).

Legislative history shows that section 1.91(b)'s one year time limit was a compromise alternative to completely abrogating common-law marriages in Texas. *See Russell v. Russell*, 865 S.W.2d 929, 932 (Tex. 1993). The Texas Legislature has had a long history of "grudging" tolerance of common-law marriages. *See Russell*, 865 S.W.2d at 931. Thus, the Legislature intended for section 1.91(b) to strictly limit parties' ability to prove a common law marriage. *See Riley v. State*, 849 S.W.2d 901, 903 (Tex. App—Austin 1993, pet. ref'd).

### B. MLIIA Section 10.01

■ The MLIIA provides: "Notwithstanding any other law, no health care liability claim may be commenced unless the action is filed within two years from the occurrence...." TEX.REV.CIV. STAT. art. 4590i, § 10.01. Section 10.01 is the exclusive statute of limitations for medical malpractice claims. *See Bala v. Maxwell*, 909 S.W.2d 889, 892–93

(Tex.1995). In *Bala*, the Court concluded that the phrase "notwithstanding any other law" clearly evinced the Legislature's unequivocal intent that section 10.01 govern when its time limitations conflicts with another law. *See Bala*, 909 S.W.2d at 892–93.

### C. Wrongful Death Act

■ An action to recover damages for wrongful death is for the exclusive benefit of the deceased's surviving spouse, children, and parents. *See* TEX. CIV. PRAC. & REM.CODE § 71.004(a); *see also Rose v. Doctors Hosp.*, 801 S.W.2d 841, 846 (Tex.1990); *Garza v. Maverick Mkt., Inc.*, 768 S.W.2d 273, 276 (Tex.1989); *Brown v. Edwards Transfer Co.*, 764 S.W.2d 220, 222 (Tex.1988). Furthermore, to bring suit under the Wrongful Death Act, a party is required to prove that he or she was the deceased's spouse, child, or parent. *See* TEX. CIV. PRAC. & REM.CODE § 71.004(a); *See also Garza*, 768 S.W.2d at 275–76; *Brown*, 764 S.W.2d at 220.

### D. Survival Statute

The Survival Statute provides that only a personal representative, administrator, or heir may sue on behalf of an estate. *See* TEX. CIV. PRAC. & REM.CODE § 71.021(b). A person who dies intestate with no children leaves all of his or her estate to his or her spouse as sole heir. *See* Tex. PROB.CODE §§ 37, 38(b)(2). The Wrongful Death Act expressly authorizes the surviving spouse to bring suit on behalf of all wrongful death beneficiaries. However, the Survival Statute is silent about whether and when a spouse may bring a survival claim. *Compare* TEX. CIV. PRAC. & REM.CODE § 71.004(b) *with* TEX. CIV. PRAC. & REM.CODE § 71.021(b).

■ This Court has determined that generally, personal representatives of the decedent's estate are the only people entitled to sue to recover estate property. *See Frazier v. Wynn*, 472 S.W.2d 750, 752 (Tex.1971). However, circumstances can exist when an heir may have standing to bring suit on behalf of the decedent's estate. Heirs at law can maintain a survival suit during the four-year period the law allows for instituting administration proceedings if they allege and prove that there is no administration pending

and none necessary. *See Frazier*, 472 S.W.2d at 752.

A family settlement agreement is an alternative method of administration in Texas that is a favorite of the law. *See In re Estate of Hodges*, 725 S.W.2d 265, 267 (Tex.App.—Amarillo 1986, writ ref'd n.r.e.); *Estate of Morris*, 577 S.W.2d 748, 755–56 (Tex.Civ. App.—Amarillo 1979, writ ref'd n.r.e.) Under section 37 of the Probate Code, when a person dies leaving a will, all of the estate devised or bequeathed by the will immediately vests in the devisees or legatees, subject to payment of the decedent's debts. The beneficiaries of an estate are free to arrange among themselves for the distribution of the estate and for the payment of expenses from that estate. *See* TEX. PROB.CODE § 37; *see also Pitner v. United States*, 388 F.2d 651, 656 (5th Cir.1967); *Estate of Hodges*, 725 S.W.2d at 267.

Section 37 also provides that when a person dies intestate, all of his estate shall vest immediately in his heirs at law, subject to payment of the debts of the estate. *See* TEX. PROB.CODE § 37. If the deceased has no children or their descendants, the surviving spouse is entitled to all of the personal estate. *See* TEX. PROB.CODE § 38(b)(2).

### III. ANALYSIS

#### A. *Shepherd v. Ledford*

##### 1. Limitations Period

Because Mrs. Ledford alleged a common-law marriage, as opposed to a formal marriage, she was required to prove the elements of an informal marriage within one year from the time the relationship ended. *See* TEX. FAM.CODE § 1.91(b). The apparent conflict arises, however, because the statute of limitations for medical negligence is two years. *See* TEX.REV.CIV. STAT. art. 4590i, § 10.01; *Bala*, 909 S.W.2d at 893.

Affirming the trial court's judgment, the court of appeals held that section 1.91(b) impermissibly reduced the time Mrs. Ledford had to file her wrongful death suit. The court reasoned that because section 1.91(b) required her to file the wrongful death lawsuit within one year of Mr. Ledford's death

and the limitations for a medical malpractice wrongful death claim is two years under section 10.01, section 1.91(b) necessarily conflicted with section 10.01. We disagree.

■ We hold that section 1.91(b) of the Family Code does not conflict with section 10.01 of the MLIIA. When the one-year time period in section 1.91(b) expires, the party asserting an informal marriage is barred only from proving the marriage's existence. *See Mossler v. Shields*, 818 S.W.2d 752, 754 (Tex.1991).

Mrs. Ledford did not have to file her medical liability claim within one year of Mr. Ledford's death. Rather, she only had to initiate a proceeding to prove the requisite elements of an informal marriage within one year of his death. *See* TEX. FAM.CODE § 1.91(a) & (b). There are legal procedures available for common-law spouses in Mrs. Ledford's situation. For example, Mrs. Ledford could have filed a Proceeding to Declare Heirship to establish the existence of her common-law marriage. *See* TEX. PROB.CODE § 48(a). Or she could have filed the wrongful death claim within one year of Mr. Ledford's death and established the existence of the common-law marriage at trial. The choice was hers, as long as she initiated a proceeding to prove her informal marriage within the one-year time limit. *See* TEX. FAM.CODE § 1.91(b); *Mossler*, 818 S.W.2d at 754.

Accordingly, we reject the court of appeals' conclusion that section 1.91(b) provided an independent limitations mechanism that directly conflicted with section 10.01. Rather, we hold that section 1.91(b) simply estops a person from claiming that he or she is informally married unless he or she starts a proceeding to establish an informal marriage within section 1.91(b)'s one year time limit. Consequently, the person would be unable to assert standing to sue under the Wrongful Death Act.

This holding is compatible with *Mossler*. In *Mossler*, the petitioner filed a second divorce action after the trial court dismissed with prejudice the initial divorce proceeding. *See Mossler*, 818 S.W.2d at 754. We held that the dismissal with prejudice of Mrs.

Mossler's first suit estopped her from bringing a second suit for divorce. We then held that section 1.91 prevented Mrs. Mossler from claiming that a common-law marriage existed in the second proceeding, achieving the same result as estoppel based upon a dismissal with prejudice. *See Mossler*, 818 S.W.2d at 754. We specifically noted that public policy supported our decision because the Legislature approved barring stale claims of an informal marriage by enacting the one-year time limit in section 1.91(b) of the Family Code. *See Mossler*, 818 S.W.2d at 754. Therefore, under the law, Mrs. Ledford was required to begin a proceeding to prove an informal marriage within one year from the time the marriage ended.

## 2. The Stipulation

We have held that section 1.91(b) required Mrs. Ledford to begin a proceeding to prove her common-law marriage within one year limit of Mr. Ledford's death, or forfeit the opportunity to establish her standing to bring suit under the Wrongful Death Act. However, under the specific facts of this case, her failure to comply with section 1.91(b) does not bar her wrongful death claim.

Mrs. Ledford sued on November 15, 1991. Despite the fact that she had not complied with section 1.91(b), the court entered an order, which reflected the parties agreement, stating that the parties "stipulated and agreed ... that Lahoma Ledford and John Ledford had a valid common-law marriage, prior to and at the time of John Ledford's death."

■■■ A stipulation is "an agreement, admission, or concession made in a judicial proceeding by the parties or their attorneys respecting some matter incident thereto." *Ortega–Carter v. American Int'l Adjustment*, 834 S.W.2d 439, 441–42 (Tex.App.—Dallas 1992, writ denied). Counsel for both parties signed the stipulation and thereby judicially admitted that Mr. and Mrs. Ledford were common-law spouses. The trial court accepted the stipulation and thus it became conclusive on the existence of the Ledfords' common-law marriage. *See Herschbach v. City of Corpus Christi*, 883 S.W.2d 720, 733 (Tex.

App.—Corpus Christi 1994, writ denied) (citing *Hennigan v. I.P. Petroleum Co., Inc.*, 858 S.W.2d 371, 372 (Tex.1993)) (stating that a "true judicial admission is a formal waiver of proof usually found in ... the stipulations of the parties."). Therefore, because the defendants judicially admitted facts that establish Mrs. Ledford's standing to bring a wrongful death action as Mr. Ledford's surviving spouse, they are estopped from now claiming to the contrary. *See Herschbach*, 883 S.W.2d at 733.

Consequently, the stipulation relieved Mrs. Ledford of her burden to prove her common law marriage, something she would not have been able to prove otherwise, and she had standing to bring the wrongful death action. Accordingly, section 1.91(b) does not apply in this case.

## 3. Survival Suit

Defendants' final contention is that the court of appeals erred in holding that Mrs. Ledford had standing to bring the survival claim on behalf of Mr. Ledford's estate. They assert that Mrs. Ledford lacks standing to sue as Mr. Ledford's heir because she did not plead and prove that no administration was pending or necessary. Defendants contend that when Mr. Ledford died he owed more than the minimum two debts to qualify for an informal estate administration. *See* TEX. PROB.CODE § 178(b).

Mrs. Ledford's evidence showed that Mr. Ledford owned no real property and had no children. Therefore, his personal estate vested immediately in Mrs. Ledford, his surviving spouse. *See* TEX. PROB.CODE § 38(b)(2). Mrs. Ledford testified that by the time of trial all Mr. Ledford's debts had been paid. She also testified that she made an agreement with other family members permitting her to take the minimal assets of Mr. Ledford's estate as his only heir. Defendants did not controvert this evidence.

■■■ The evidence shows that the family had resolved the estate's disposition and that all debts were paid. Accordingly, no administration was necessary for it would have served no purpose. We see no reason why the *Pitner* rationale approving no administra-

tion when the devisees under a will make an agreement to distribute the estate and pay the bills does not apply with equal force in the situation where the heirs of an intestate decedent make an agreement to distribute the estate and pay the bills. *See Pitner,* 388 F.2d at 656. Thus, the *Pitner* rationale applies here, where the decedent owned only personal property, and that property vested immediately in Mrs. Ledford. Accordingly, we hold that under the facts and because of the family agreement, no formal administration was necessary. *See In re Estate of Hodges,* 725 S.W.2d at 267; *Estate of Morris,* 577 S.W.2d at 755–56. We conclude the court of appeals correctly determined that Mrs. Ledford had standing to sue on behalf of Mr. Ledford's estate.

### 4. Juror Disqualification

We now turn to Mrs. Ledford's complaint that the court of appeals erred in remanding the case for trial because the trial court did not disqualify an allegedly biased prospective juror. Drs. Shepherd and Graham contend that the trial court abused its discretion in refusing to strike the prospective juror for cause.

■ A prospective juror who admits bias or prejudice is disqualified to serve as a juror. *See* TEX. GOV'T CODE § 62.105(4); *Compton v. Henrie,* 364 S.W.2d 179, 182 (Tex.1963). When a trial court refuses to disqualify a juror for bias or prejudice, the complaining party must show that the error was harmful. To do this, the party, before exercising its peremptory challenges, must advise the trial court that "the court's denial of the challenges for cause would force the party to exhaust its peremptory challenges and, that after exercising its peremptory challenges, specific objectionable jurors would still remain on the panel." *Goode v. Shoukfeh,* 943 S.W.2d 441, 452 (Tex.1997); *Hallett v. Houston N.W. Med. Ctr.,* 689 S.W.2d 888, 890 (Tex.1985).

During voir dire, defendants' counsel elicited statements from three consecutive prospective jurors that none of them could be fair to the defendants because of the results of medical treatment experienced by family members. Defense counsel asked prospec-

tive juror Caudill if she could consider the facts objectively and in a neutral way. She replied, "I don't think so." Next, counsel asked prospective juror Somerville: "You feel that based upon your past experience, you could not be fair and objective in looking at the medical facts as they have been testified to so that both sides start out evenly in this case; is that correct ma'am?" In response, Somerville responded, "That is true." Immediately following this exchange, counsel began to ask the following question of the jury panel, and venireperson Guerra responded:

> COUNSEL: Is there anybody else, after we've listened to this-
>
> GUERRA: *I feel the same way.* ... My dad died of a heart attack also. I just don't like to talk about it because it brings back bad memories. But yeah, I think it would have a—I would have a problem with that.
>
> COUNSEL: [A]s a result of that, you feel that Mrs. Ledford would be—you would feel for her and put her—sort of put her ahead of the defense in this case ... ?
>
> GUERRA: I think so. Like I said, my dad was—after that, for a long, he was in a coma, so I seen [sic] him suffer a lot, and I know what it did to me.

The trial court granted Shepherd's motion to strike Caudill and Somerville for cause. However, despite defendants' showing that Guerra was biased and that they would be forced to use a peremptory strike on Guerra that they would otherwise have used on another specific objectionable juror, the trial court refused to strike Guerra for cause.

■ The court of appeals correctly held that Guerra was disqualified as a matter of law. Guerra expressed his bias, and the trial court should have granted the defendants' motion to strike Guerra for cause. Accordingly, we affirm the court of appeals' judgment and remand this case to the trial court.

### B. *Transamerican v. Fuentes*

### 1. Limitations—Wrongful Death

■ "A person must bring suit not later than two years after the day the cause of

action accrues in an action for injury resulting in death." TEX. CIV. PRAC. & REM.CODE § 16.003(b). As we have explained, section 1.91(b) sets the time limit in which a proceeding to prove an informal marriage must be brought. Thus, for the same reasons discussed above, section 1.91(b) does not supplant or conflict with the two-year statute in section 16.003(b).

It is undisputed that Mrs. Fuentes and Mr. Fuentes were never formally married and never filed a declaration of informal marriage. Thus, the only way Mrs. Fuentes could assert standing to bring this suit under the Wrongful Death Act is if she proved she was Mr. Fuentes's common-law surviving spouse. *See* TEX. CIV. PRAC. & REM.CODE § 71.004(a).

 Mrs. Fuentes had to initiate a proceeding to prove that she was Mr. Fuentes's common-law surviving spouse within one year of his death. *See* TEX. FAM.CODE § 1.91. However, Mrs. Fuentes did not initiate a proceeding to prove her common-law marriage within section 1.91(b)'s one-year requirement; therefore, she is barred from offering any proof of that relationship.

 The purpose of the Wrongful Death Act is "to provide a means whereby surviving spouses, children, and parents can recover" for the loss of their family member. *Garza,* 768 S.W.2d at 275. Because section 1.91(b)bars Mrs. Fuentes from proving her standing as Mr. Fuentes's surviving spouse, she cannot maintain her wrongful death action against Transamerican.

## IV. CONCLUSION

### A. *Shepherd v. Ledford*

While we affirm the court of appeals' judgment in this case, we disapprove of the court of appeals' determination that Family Code section 1.91(b) conflicts with MLIIA section 10.01. Section 1.91(b) is a time limit for bringing a proceeding to prove the requisite elements of a common-law marriage. However, because the parties stipulated to the Ledfords' common-law marriage, Mrs. Ledford had standing to bring a wrongful death claim without meeting section 1.91(b)'s re-

quirements. Furthermore, Mrs. Ledford, as Mr. Ledford's sole heir, also has standing to assert his survival action.

Because the trial court erroneously refused to disqualify venireperson Guerra, despite his apparent bias, we remand this case to the trial court for proceedings consistent with this opinion.

### B. *Transamerican v. Fuentes*

Mrs. Fuentes had no standing to file a wrongful death claim because she did not file a proceeding to prove the existence of a common-law marriage within section 1.91(b)'s time limit. Therefore, she is barred from maintaining her wrongful death claim against Transamerican. Accordingly, we reverse the court of appeals' judgment and render judgment that Mrs. Fuentes take nothing.

HECHT, J., joined by PHILLIPS, C.J., and OWEN, J., concurs and dissents in part.

HANKINSON, J., not sitting.

HECHT, Justice, joined by PHILLIPS, Chief Justice, and OWEN, Justice, concurring and dissenting in part.

I agree with the Court that Section 1.91(b) of the Family Code bars plaintiffs' recoveries in these two cases. I do not agree, however, that Dr. Shepherd and Dr. Graham's attorney waived applicability of that statute by stipulating that Lahoma and John Ledford had a valid common law marriage. The purpose and effect of the stipulation was merely to obviate the necessity of proof of the marriage at trial; it was not intended to waive defendants' consistent contention that even if a marriage existed, Section 1.91(b) precluded Ledford from asserting it in this action. The Court's contrary conclusion is not supported by the text of the stipulation and is contrary to defendants' intent apparent in the context in which the stipulation was made. I would hold that the stipulation does not preclude the application of Section 1.91(b), and that judgment should be rendered for Drs. Shepherd and Graham, just as the Court renders judgment for TransAmerican Natural Gas Corporation and the other defendants in the companion case. From the affirmance of the

judgment against Drs. Shepherd and Graham I respectfully dissent.

Ms. Ledford could not sue for John Ledford's death without proving that she had been his wife. *See* TEX. CIV. PRAC. & REM. CODE § 71.004. Ms. Ledford claimed a common-law marriage to John Ledford. Section 1.91(b) requires that a proceeding in which a common-law marriage is to be proved must be brought within one year of the relationship's end. Ms. Ledford did not initiate such a proceeding within the prescribed time period. Thus, as the Court holds, she cannot recover in this action unless defendants waived applicability of Section 1.91(b).

Before trial Dr. Shepherd and Dr. Graham asserted that Section 1.91(b) prevented Ms. Ledford from recovering for John Ledford's death because this action was undisputedly not brought within one year of the termination of their relationship. Defendants took this position in a motion for summary judgment, a supplemental motion for summary judgment, and a plea in abatement. The district court consistently rejected defendants' argument.

On the first day of trial, counsel for all parties approved a written stipulation "that Lahoma Ledford and John Ledford had a valid common-law marriage prior to and at the time of John Ledford's death." The stipulation was made in the form of an order signed by the district court and approved by counsel. At the close of plaintiff's evidence, defendants moved for a directed verdict on the ground that Section 1.91(b) precluded plaintiff from proving a common-law marriage. Without allowing plaintiff's counsel to respond, the district court denied the motion, stating: "I take this as [defendants' counsel's] preserving her record for purposes of appeal. Since we've addressed this question ... in motions for summary judgment and on other occasions, my ruling will be consistent." Thus, at this point in the trial, several days after the stipulation had been made, the district court, who signed the stipulation, was apparently of the view that defendants had not waived their Section 1.91(b) defense. Had the court thought that the stipulation waived the defense, there would have been no reason to refer to defendants' motion for directed verdict as being made to preserve their complaint for appeal. The district court's statement indicated that defendants had not by their stipulation waived their contention that Section 1.91(b) precluded plaintiff's recovery.

At the close of the evidence, Drs. Shepherd and Graham again moved for a directed verdict based on Section 1.91(b). Again the district court denied their motion without permitting plaintiff to respond. After a verdict against Drs. Shepherd and Graham, they moved for judgment non obstante veredicto, still asserting Section 1.91(b). For the first time, Ms. Ledford argued that defendants waived their contention by their pretrial stipulation. The court denied defendants' motion and rendered judgment against Drs. Shepherd and Graham for $150,000, plus interest.

Unquestionably, Drs. Shepherd and Graham *could* have stipulated that Ms. Ledford would succeed in proving that she was married to John Ledford if only Section 1.91(b) permitted her to do so, without waiving their argument that Section 1.91(b) precluded her from making such proof. A defendant can stipulate that available evidence would prove a fact without waiving the contention that recovery based on the fact is barred for some other reason. To take another example, a defendant can stipulate that his negligence caused plaintiff's injuries without waiving his contention that plaintiff's claim is barred by limitations. The Court does not, and cannot, argue to the contrary. The question is not *could* defendants make such a limited stipulation, but *did* they.

"Waiver is an intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right." *Sun Exploration & Prod. Co. v. Benton*, 728 S.W.2d 35, 37 (Tex.1987). More than a century ago we said that waiver is "'largely a matter of intention'". *Pope v. A.T. Graham & Co.*, 44 Tex. 196, 199 (1875). More recently, we stated: "[W]aiver must be clearly established by facts or circumstances showing an intention by one party to waive and an understanding to that effect by the other." *Garner v. Texas State Bd. of Pharmacy*, 304 S.W.2d 530, 534 (Tex.Civ.App.—Eastland

1957, writ ref'd). Neither the intention by Drs. Shepherd and Graham to forego their Section 1.91(b) defense, nor the contemporaneous understanding by Ledford that they had done so, both requisite for waiver under our holding in *Garner,* is present.

I agree with the court of appeals in *United States Fire Insurance Co. v. Carter,* 468 S.W.2d 151, 154 (Tex.Civ.App.—Dallas), *writ ref'd n.r.e.,* 473 S.W.2d 2 (Tex.1971) (per curiam), when it wrote:

> A stipulation is an agreement or contract between the parties made in a judicial proceeding in respect to some matter incident thereto and for the purpose, ordinarily, of avoiding delay, trouble and expense.... Being a contract the stipulation must truly express the intentions of the parties making same. A court will not construe a stipulation so as to effect an admission of something intended to be controverted or so as to waive a right not plainly agreed to be relinquished.

*Accord: Jackson v. Lewis,* 554 S.W.2d 21, 24 (Tex.Civ.App.—Amarillo 1977, no writ) (stating also that a stipulation "will be given no more force than the parties intended it to have"); *see also Discovery Operating, Inc. v. Baskin,* 855 S.W.2d 884, 886 (Tex.App.—El Paso 1993, no writ); *Ortega–Carter v. American Int'l Adjustment Co.,* 834 S.W.2d 439, 441–442 (Tex.App.—Dallas 1992, writ denied); *National Union Fire Ins. Co. v. Martinez,* 800 S.W.2d 331, 334 (Tex.App.—El Paso 1990, no writ). I also agree with the court of appeals in *Mann v. Fender,* 587 S.W.2d 188, 202 (Tex.Civ.App.—Waco 1979, writ ref'd n.r.e.) (quoting *Texas Indem. Ins. Co. v. Dunn,* 221 S.W.2d 922, 924 (Tex.Civ. App.—Waco 1949, no writ)), that "[t]he intention of the parties in a trial stipulation is for the determination of the court from the language used in the entire agreement 'in the light of the surrounding circumstances, including the state of the pleadings, the allegations therein, and the attitude of the parties in respect of the issues.' "

The stipulation does not itself reflect an intention to waive applicability of Section 1.91(b), and there is no other evidence in our record from which that intention can be discerned. To the contrary, Drs. Shepherd and Graham have consistently maintained before trial, during trial, after trial, and on appeal, that Ms. Ledford's recovery is barred by Section 1.91(b). Defendants explained that they agreed to the stipulation as a mechanism for shortening the trial of the case by obviating the need for plaintiff to adduce evidence of her common-law marriage which defendants acknowledged existed but argued was to no avail because of the statute. The district court, who signed the stipulation, was apparently of the view mid-trial that defendants had not waived their position. Ms. Ledford did not assert that defendants had waived their Section 1.91(b) defense until she filed her response to defendants' motion for judgment non obstante veredicto. While it now appears that defendants' counsel would have been prudent to expressly reserve defendants' Section 1.91(b) contention in the stipulation, she was not required to do so. Waiver is the intentional relinquishment of a known right, not the unintentional failure to reserve a known right.

The Court offers no explanation for its holding that Drs. Shepherd and Graham intended to waive a defense they had consistently asserted prior to trial and continued to assert afterward. Absent a clear statement of waiver in the stipulation, any evidence of an intent to waive defenses in defendants' conduct, any evidence that plaintiff understood the stipulation to be a waiver at the time it was made, and any suggestion of a reason why defendants might have intended to waive a position they were continuing to assert, I would hold that Drs. Shepherd and Graham did not waive their defense under Section 1.91(b). The $150,000 judgment against them is simply not their lawyer's fault. Because the Court says it is, I respectfully dissent.