IN THE SUPREME COURT OF TEXAS








IN THE SUPREME COURT OF TEXAS

 

════════════

No. 03-0914 

════════════

 

Hyundai Motor Co. and Hyundai
Motor America, Inc., Petitioners,

 

v.

 

Victor Manuel Vasquez and
Brenda Suarez Vasquez, Individually and on Behalf of the Estate of Alyssa Amber
Vasquez,  Respondents

 

════════════════════════════════════════════════════

On Petition for Review from the

Court of Appeals for the Fourth District of
Texas

════════════════════════════════════════════════════

 

Argued February
15, 2006 and January 6, 2005

 

 

 

Justice Medina,
joined by Justice Wainwright and Justice Johnson, dissenting.

 

We can all agree that (1) litigants are
entitled to fair and impartial jurors, (2) voir dire should not be used as an
exercise to preview the verdict, and (3) trial courts must necessarily have
broad discretion when conducting voir dire.  That said, I do not agree
that a trial court can totally divorce the legitimate search for bias and
prejudice during voir dire from all material facts in the case.  I also
disagree with the Court=s
statement of the issue in this case because this case is not simply about the
weight prospective jurors may attach to certain evidence but whether such
jurors can follow their oath and the court=s
instructions.  I believe that the issue is whether the trial court abused
its discretion when it cut off questioning about seat belts; specifically
questions about whether members of the venire would fairly consider all the
evidence in the product liability and wrongful death suit, knowing that the
decedent was not wearing her seat belt at the time of the accident.

The trial court here summarily dismissed two
jury panels after approximately 60% of the first panel, and 35% of the second,
initially indicated that they would not listen to any other evidence in the
case upon learning that Amber was not wearing a seat belt at the time of the
accident.  Before beginning a third voir dire, the trial court devised a
new format for questioning the panel, requiring that specific questions about
seat belt attitudes be asked only during individual questioning of prospective
jurors, and not to the panel as a whole, as had been done previously. 
When the time came to ask these questions individually, however, the trial
court abandoned its plan, forbidding any further questions about seat
belts.  The Court agrees that this was error, but concludes that the error
was not appropriately preserved for our review.  I disagree and therefore
respectfully dissent.

I

In order to discover disqualifying bias or
prejudice, we have said that litigants must be allowed reasonable latitude in
examining prospective jurors on voir dire.  Babcock v. Nw. Mem=l Hosp., 767 S.W.2d
705, 709 (Tex. 1989).  We recently noted, however, that a litigant may
not, under the guise of bias and prejudice, ask prospective jurors to pledge or
speculate about how specific evidence in the case may influence their verdict.  See
Cortez v. HCCI-San Antonio, Inc., 159 S.W.3d 87, 94 (Tex. 2005) (attempts
to preview a prospective juror=s
likely vote not permitted).  Such questions, commonly referred to as
commitment questions, are improper because they seek to commit prospective
jurors to a particular view based on selected facts or evidence disclosed by
counsel.  See Lassiter v. Bouche, 41 S.W.2d 88, 90 (Tex. Civ. App.BDallas 1931, writ
ref'd).  Their purpose is not to uncover a specific bias or prejudice but
to identify prospective jurors who are impressed by the perceived strength or
weakness of a particular piece of evidence.

The parties to this appeal strongly disagree
about whether the rejected question here was an improper commitment
question.  The Court suggests that it was, and further submits that the
Court of Criminal Appeals, which has had more experience in such matters, would
agree with that assessment.  But the subject of commitment questions
remains a fertile area for debate despite the efforts of our Court of Criminal
Appeals.  

It was a sharply divided Court of Criminal
Appeals that recently proposed a complex analysis for determining when voir
dire questions seek an improper commitment from prospective jurors.  In Standefer
v. State, 59 S.W.3d 177 (Tex. Crim. App. 2001), the court described
commitment questions as those that commit a prospective juror to resolve, or to
refrain from resolving, an issue a certain way after learning a particular
fact.  Id. at 179.  The court noted, however, that not all
commitment questions are improper.  Id. at 181.  “When
the law requires a certain type of commitment from jurors, the attorneys may
ask the prospective jurors whether they can follow the law in that
regard.”  Id.   Thus, the court noted that it might
be appropriate to ask in a murder case if the prospective juror could consider
probation because the law requires jurors in such cases to consider the full
range of punishment, including probation.  Id.  Such a
question would not be inappropriate because it merely commits the juror to
follow the law.  But when the law does not require the commitment, such
that a juror would not be disqualified for cause if influenced by a particular
fact or if possessed of a particular attitude or opinion, then the question
would be improper.  Id. at 181-82 (Afor
a commitment question to be proper, one of the possible answers to that
question must give rise to a challenge for cause”).  The court
further cautioned that even when the question meets the challenge-for-cause
requirement, the question may still be improper if it includes facts
unnecessary to establish a challenge for cause.  Id. at 182. 
Four members of the court disagreed with the analysis, complaining that A[t]he majority=s attempt to clarify what
constitutes a commitment question simply muddies the issue more by attempting
to create a bright-line standard.”  Standefer, 59 S.W.3d at
186 (Johnson, J. dissenting).

Although I empathize with the Court of
Criminal Appeals=
efforts to define standards for this area of the law, I ultimately must agree
with the dissent that Standefer provides no bright-line test for
distinguishing an improper commitment question from a proper bias
question.  Nor can I propose an alternative test because I agree with the
Court that the process “does not lend itself to formulaic
management.”  ___ S.W.3d at ___ (quoting 4 Roy W. McDonald & Elaine A. Grafton Carlson, Texas Civil
Practice '
21:19, at 116 (2d ed. 2001).

Clearly, a prospective juror who expresses
disqualifying bias for or against a party or the litigation=s subject matter cannot
serve, but no single rule can explain the extent to which specific evidence in
the particular case may be used to test for such bias.  In one sense, the
facts of the case are inconsequential because disqualifying bias or prejudice
will exist irrespective of the strength or weakness of one=s case.  But bias and
prejudice cannot be probed in a vacuum, and therefore some discussion of the
evidence is inevitable.  And it may occasionally happen that a material
piece of evidence which strongly favors one party coincides with a bias or
prejudice of a particular prospective juror.  Because no one rule fits all
circumstances, the burden must inevitably fall on the trial court to reasonably
manage the voir dire, while guaranteeing the constitutional imperative of a
fair trial.  Thus, the overriding principle here is that the trial court
is vested with broad discretion to control the voir dire, and its rulings
should not be disturbed absent a clear abuse of that discretion.  Babcock,
767 S.W.2d at 708 (citing Texas Employers Ins. Ass'n v. Loesch, 538
S.W.2d 435, 440 (Tex. Civ. App.BWaco
1976, writ ref=d
n.r.e.)).

The question rejected by the trial court here
inquired of the venire if they could be fair and impartial to the claim of the
unbelted decedent.  Admittedly, the question is vague although the Court
finds it clear enough that the question=s
purpose was to preview the verdict rather than to probe for bias or
prejudice.  But the trial judge must have understood the question to touch
upon disqualifying bias or prejudice at one time or she would not have struck
the first two panels.

Before the third voir dire began, the trial
judge indicated that she would again permit the Vasquezes to ask about seat
belt bias during individual questioning of the venire.  She later changed
her mind, however, sustaining Hyundai=s
objection to the aforementioned question and stating: “We are not going
to go any further into seat belts.”  The Vasquezes= attorney objected that the
court=s ruling
prevented him from exploring a relevant bias.  The trial judge
acknowledged that she understood counsel=s
objection, but did not modify her ruling. 

A disqualifying bias or prejudice exists
whenever a prospective juror=s
opinions for or against a party or the subject matter of the litigation are so
strong that the juror=s
decision will be based on those opinions rather than on the evidence presented
at trial.  See Cortez v. HCCI-San Antonio, 159 S.W.3d 87, 94 (Tex.
2005); see also 1 William V.
Dorsaneo III & Earl Johnson, Jr., Texas
Civil Trial Guide '
10.03[2], at 10-15 (2005) (citing Shepperd v. Ledford, 962 S.W.2d 28, 34
(Tex. 1998)).   The purpose of voir dire is to identify this type of
bias or other disqualifying cause and, failing that, to make intelligent use of
peremptory challenges.  Babcock, 767 S.W.2d at 709.  And
although a trial court has discretion to impose reasonable limitations on voir
dire and may control the form of any question seeking legitimate information,
it does not have discretion to simply foreclose a proper line of
questioning.  See Barajas v. State, 93 S.W.3d 36, 38 (Tex.
Crim. App. 2002) (abuse of discretion to prevent “a proper question about
a proper area of inquiry”).  As the Court observes, the trial court
could not have denied the Vasquezes the right to ask the venire if anyone had a
firm bias against product liability claims that would prevent them from
considering the plaintiffs=
claims.  ___ S.W.3d at ___.  Similarly, any prospective juror in an
automobile product liability action who had such strong feelings about unbelted
occupants as would preclude that juror from listening to all the evidence and
following the court=s
instructions would be subject to challenge.

I do not disagree that the question rejected
by the trial court, as it was phrased, was an impermissible attempt to pre-test
the weight jurors would attach to Amber not being belted.  However, this
improper question did not authorize the trial court to foreclose the entire
area of properly-phrased seat belt usage questions.  As the record
reflects, there were (and are) a number of ways to pose the subject to the
jury.  See 119 S.W.3d at 851-54.  Not all of them are improper
commitment or pre-testing questions.  But, when a trial court tells a
party=s attorney that
there will be no further inquiry into a particular subject matter, as was done
in this case, that party should not be prejudiced by taking the court=s ruling at face value.

A court abuses its discretion when it
renders an arbitrary decision, lacking support in the facts and circumstances
of the case.  Goode v. Shoukfeh, 943 S.W.2d 441, 446 (Tex. 1997); Johnson
v. Fourth Court of Appeals, 700 S.W.2d 916, 917 (Tex. 1985).  The
trial court controls the process, Cortez, 159 S.W.3d at 92, and may in
its discretion reject questions which pose unnecessary factual detail or
otherwise attempt to fish for a prospective juror=s
reaction to evidence, but it abuses its discretion when its rulings are
arbitrary and go beyond that necessary to protect the integrity of the
process.  The trial court could have required the Vasquezes= question to be more
precisely drawn, but the court did not have discretion to forbid the area of
inquiry altogether.   Cf. Howard v. State, 941 S.W.2d 102, 108
(Tex. Crim. App. 1996) (litigant must rephrase or waive an improperly phrased
question where trial court places no absolute limitation on the underlying
substance of the voir dire).  The trial court accordingly abused its
discretion when it cut off any further questions about seat belts.

The Court, however, concludes that the
Vasquezes= objection
to this ruling was not specific enough to preserve error.  But rules are
not traps.  See McConnell v. Southside Indep. Sch. Dist.,  858
S.W.2d 337, 346 (Tex. 1993) (Hecht, J. dissenting) (“When rules are
divorced from the basic principles they effectuate, the resulting structure is
deformed and arbitrary, and its purpose B
achieving justice B is
thwarted.”).  Preservation rules exist to inform courts of error in
a plain and timely manner so that they can make informed rulings.  See,
e.g., State Dept. of Highways & Pub. Transp. v. Payne, 838 S.W.2d 235,
241 (Tex. 1992).  That happened in this case when the court acknowledged
that it understood the basis for the Vasquezes=
objection and ruled that it would permit no further questions on seat
belts.  Moreover, Hyundai=s
counsel acknowledged during argument to this Court that the trial court was
fully apprised of the types of questions the Vasquezes wanted to pursue from
the preceding voir dires.  

II

Having concluded that the trial court erred
in restricting voir dire in this case, I must next consider whether such error
was harmful.  Hyundai argues that any error was harmless because the
Vasquezes had a fair opportunity to discover bias or prejudice by questioning
the panel about their personal seat belt habits.  Moreover, Hyundai
submits that the court of appeals erred in presuming harm rather than
considering whether the error either “probably caused rendition of an
improper judgment” or “probably prevented the appellant from
properly presenting the case to the court of appeals.”  Tex. R. App. P. 44.1(a); see also
Tex. R. App. P. 61.1(a).  

The Vasquezes respond that general questions
regarding personal seat belt habits were too broad to be useful in uncovering
an existing bias against an injured party who did not use her seat belt. 
They further respond that presumed harm is the appropriate analysis when a
trial court errs in seating a jury during voir dire.

First, I agree that questions about personal
seat belt habits were not a reasonable substitute for a direct question about
seat belt non-use bias.  Just as our Court of Criminal Appeals has
cautioned against injecting unnecessary specifics into voir dire questioning,
so too has the Supreme Court condemned another extreme B the use of such general inquiries as to deny
a party=s right to an
adequate voir dire.  Morgan v. Illinois, 504 U.S. 719, 734-35
(1992).  Too little information in the question can be as damaging to the
process as too much.  See id. at 729 (“part of the guarantee
of a defendant=s right
to an impartial jury is an adequate voir dire to identify unqualified
jurors”).  Without some connection to the case to “lay bare
the foundation of [a] challenge for cause,” the right not to be tried by
jurors who harbor a disqualifying bias, or inability to follow the law, is
“nugatory and meaningless.”  Id. at 733-34.

Next, regarding harm analysis in this type
of case, we said in Babcock that the trial court=s erroneous refusal to permit a party to ask
an appropriate question about subject matter bias was harmful because it denied
that party=s
“constitutional right to trial by a fair and impartial jury.” 
Babcock, 767 S.W.2d at 709.  For this proposition, we cited Texas
& Pacific Ry. v. Van Zandt, 317 S.W.2d 528, 531 (Tex. 1958), in which
we said that the “mere denial [of the constitutional right of trial by
jury] raise[d] an inference of probable harm.”  Similarly, in another
case in which the jury was seated in an improper manner, we adopted the
following harmless error analysis as our own:

It
would be impossible for appellant to demonstrate with any degree of certainty
that he in fact suffered injury as a result of the manner in which the jury
panel was selected, and he has made no effort to show specific harm or injury,
but we think that harm within contemplation of the so‑called harmless‑error
rule . . ., must be presumed in the circumstances, if such rule or rules can be
said to be applicable to the situation at all.  Approval of the judgment
would be tantamount to denying appellant his constitutional right of a trial by
jury, because trial by a jury that has at least been selected in substantial
compliance with law is what is guaranteed him by both the federal and our state
constitutions.

 

Heflin v. Wilson, 297 S.W.2d 864, 866 (Tex. Civ. App.BBeaumont 1956, writ ref'd);
cf. Rivas v. Liberty Mut. Ins. Co., 480 S.W.2d 610, 612 (Tex. 1972)
(harm not presumed when error is procedural and does not violate fundamental
right of trial by jury).

An improperly impaneled jury is also akin to
the denial of one.  In this latter situation, we have held that the
failure to grant a jury trial, when properly requested, is harmless only when
“the record shows that no material issues of fact exist and an instructed
verdict would have been justified.”  Halsell v. Dehoyos, 810
S.W.2d 371, 372 (Tex. 1991); see also Mercedes‑Benz Credit Corp. v.
Rhyne, 925 S.W.2d 664, 667 (Tex. 1996).  More recently, we noted that
an appellate court must presume harm when an objectionable person is
erroneously included on a jury because the court “cannot know for certain
that his inclusion did not affect the verdict.”  Cortez, 159
S.W.3d at 91.

Just as in Cortez, it is impossible
to know here whether the verdict would have been different had the jury been
seated properly.  But as in other cases involving the right to trial by
jury, our harm analysis must reflect the importance our justice system accords
this precious right.  See Gen. Motors Corp. v. Gayle, 951 S.W.2d
469, 476 (Tex. 1997) (right to jury trial is "one of our most precious
rights"); see also McDaniel v. Yarbrough, 898 S.W.2d 251,
253 (Tex. 1995) (“Denial of the constitutional right to trial by jury constitutes
reversible error.”).  I conclude then that the court of appeals
correctly relaxed its harmless error analysis under the circumstances of this
case. 

III

Finally, I find it highly improbable that
all of the prospective jurors who responded affirmatively to the seat belt bias
questions during the failed voir dires actually harbored disqualifying bias or
prejudice against unbelted claimants.  It is more likely that their
responses were the result of confusion or misunderstanding as the trial court
itself acknowledged after the second voir dire.  A prospective juror does
not demonstrate disqualification merely by raising his or her hand in response
to a question asking about bias or prejudice.  The court or parties should
ordinarily follow up to confirm or dispel any initial notion of
disqualification.  See Cortez, 159 S.W.2d at 93 (“If the
initial apparent bias is genuine, further questioning should only reinforce
that perception; if it is not, further questioning may prevent an impartial
veniremember from being disqualified by mistake.”).

The voir dire in this case occurred before
our decision in Cortez, which may explain the court=s management of the
process.  No attempt was made to discover what the prospective jurors
actually intended when 29 of them, about 60% of the first panel, raised their
hands in response to the seat belt question and when 18 of them, about 35% of
the second panel, responded similarly.   ___ S.W.3d at ___
n.10.  After the second voir dire, the court recognized the problem:
“The problem . . . is I was automatically excluding some people who may
have [mis]undersood [the seatbelt] questions . . .”  The court=s solution to that problem
was to permit individual questioning of the prospective jurors, but it abruptly
abandoned that plan before it was ever implemented.  Instead, the court
solved its problem of “automatic exclusion” by simply forbidding
any further inquiry into seat belts.  In Cortez, however, we
admonished that “trial judges must not be too hasty in cutting off
examination that may yet prove fruitful.”  Cortez, 159 S.W.3d
at 92.

Because I believe the trial court=s solution of forbidding
further inquiry into the issue of seat belt bias was arbitrary and made without
reference to the principles which should have guided the court=s discretion, I would
affirm the judgment of the court of appeals and remand this case for
trial.  Because the Court does not, I dissent.

 

____________________________________

David M. Medina

Justice

 

Opinion delivered:         March
10, 2006