# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00297-CV

**Texas Department of Public Safety, Appellant// Cross-Appellants, Alan W. Alexander, Billy Davis, Joseph Randy Dillard, Ruben Duran, Kenny Foster, Maria G. Garza, Gregory Haire, Bobby Harper, Eduardo Jimenez, Dennis D. Land, Danny Lewis, William D. Lord, James S. Lucas, Gary P. McCully, Robert E. Ralls, Jerry Schwab**

v.

**Alan W. Alexander, Billy Davis, Joseph Randy Dillard, Ruben Duran, Kenny Foster, Maria G. Garza, Gregory Haire, Bobby Harper, Eduardo Jimenez, Dennis D. Land, Danny Lewis, William D. Lord, James S. Lucas, Gary P. McCully, Robert E. Ralls, Jerry Schwab, Appellees// Cross-Appellee, Texas Department of Public Safety**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT NO. GN202911, HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING

## DISSENTING OPINION

Following the parties' agreed remand from federal court and a two-and-a-half week jury trial in the state district court, the majority *sua sponte* departs from the issues raised by the parties on appeal and undertakes its own fact-finding to vacate and dismiss the judgment rendered in favor of appellees, employees of Texas Department of Public Safety (DPS). The majority discards the 2004 jury verdict by finding that appellees' discrimination and retaliation claims brought under chapter 21 of the labor code were time-barred because there was no evidence that appellees filed "proper" administrative complaints during the applicable 180-day statutory period. *See* Tex. Lab.

Code Ann. §§ 21.051, .055, .202 (West 2006).[1] The majority also vacates and dismisses appellees' claims brought under the Uniform Declaratory Judgments Act[2] by finding that they were "in fact" discrimination or retaliation claims and that the TCHRA remedies were exclusive. Because I would conclude that the district court had jurisdiction to hear appellees' TCHRA and declaratory judgment claims, I respectfully dissent.

***Procedural Background***

On August 20, 2002, appellees brought this suit against DPS, seeking relief under the UDJA concerning the November 2001 promotion process of eleven Captain positions in the Narcotics Service.[3] Appellees alleged that DPS violated state law because the process was "rigged" to preselect the candidates that would be promoted and sought a declaration that "the promotions at issue in this case were not based on merit, in violation of Section 411.007(b) [of the government code]." *See* Tex. Gov't Code Ann. § 411.007(b) (West Supp. 2009).[4] On the same day, appellees also brought suit against individual DPS supervisors in federal court concerning the November 2001

---

[1] The powers and duties of the Texas Commission on Human Rights ("TCHR") were transferred to the Texas Workforce Commission Civil Rights Division in 2004. *See* Tex. Lab. Code Ann. § 21.0015 (West 2006). Because appellees filed their administrative complaints with the TCHR, I refer to appellees' claims as their "TCHRA" claims.

[2] *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 37.001-.011 (West 2008).

[3] DPS is divided into major divisions. One of its major divisions is Criminal Law Enforcement. Criminal Law Enforcement is subdivided into services, one of which is the Narcotics Service.

[4] Section 411.007(b) had not been amended during the pendency of this suit. For convenience, I cite to the current version of the code.

promotion process, alleging, among other claims, claims under the Age Discrimination in Employment Act of 1967 and Title VII of the Civil Rights Act of 1964.[5]

Appellees filed an amended petition in this action in January 2003. They continued to seek declaratory relief, but they also sought relief under both federal and state anti-discrimination laws, including the TCHRA, the ADEA, and Title VII. Appellees pleaded that they "have filed their complaints" with the Equal Employment Opportunity Commission as well as the TCHR, "received right-to-sue letters," and "fulfilled all conditions precedent to bringing this action." DPS shortly thereafter removed appellees' state claims to federal court, and the federal court consolidated the two suits. During the pendency of the consolidated action, DPS expressly admitted in its answer that all sixteen appellees had filed administrative complaints and received right-to-sue letters, and DPS did not contend that appellees had failed to exhaust their administrative remedies.

Following a summary judgment hearing and ruling in federal court that raised the specter of multiple appeals and trials, the parties agreed that appellees would not pursue certain parallel federal claims and that appellees' remaining TCHRA claims and their declaratory claims would be remanded to state court.[6] In accordance with the parties' agreement, the federal court dismissed the parallel federal claims and remanded appellees' remaining state claims in December 2003.

---

[5] *See* 29 U.S.C. §§ 621-634 (2009) (ADEA); 42 U.S.C. §§ 2000e-2000e-17 (2009) (Title VII).

[6] The federal court denied summary judgment as to the discrimination claims of appellees Garza, Haire, and Lewis but granted it as to the discrimination claims of the other appellees. Each of appellee's claims for retaliation after the December 2001 captains promotion also remained after the summary judgment ruling.

3

In accordance with the parties' agreement, appellees filed an amended petition in December 2003, deleting their parallel federal claims.[7] DPS filed an answer to the amended petition in February 2004 and a plea to the jurisdiction in June 2004, contending that appellees' TCHRA claims were time-barred because they had failed to timely file their administrative complaints.[8] Attached to DPS's plea were copies of EEOC's respective notices to DPS that included copies of the charges of discrimination. DPS did not challenge the form or content of appellees' perfected charges of discrimination, *see* Tex. Lab. Code Ann. § 21.201 (West 2006), but only that the charges were filed outside the 180-day statutory deadline. *See id.* § 21.202. Assuming the limitations period began to run November 30, 2001, the date appellees were advised of the promotion decision, appellees were required to file their charges of discrimination by May 29, 2002.

Appellees responded to DPS's plea to the jurisdiction with argument and evidence. Among their arguments, they asserted that the summary judgment ruling in federal court raised the "specter of multiple trials and multiple appeals of common issues of fact," and "Plaintiffs and Defendants agreed—and the Court approved—of Plaintiffs voluntarily dismissing certain federal claims with the understanding that the parallel state-law claims would be remanded to state court for trial." Their evidence included:

---

[7] Each of the appellees alleged retaliation claims under the TCHRA and declaratory judgment claims, but only Garza, Haire, and Lewis alleged discrimination claims under the TCHRA.

[8] In its plea to the jurisdiction, DPS also contended that sovereign immunity barred appellees' TCHRA claims because the employees were unable to support certain essential elements of their retaliation and discrimination claims under the TCHRA: an adverse action (retaliation), a causal link (retaliation), and pretext (discrimination and retaliation).

- transcripts from the hearings in federal court on October 28, 2003, and October 31, 2003;

- affidavits from appellees' counsel, Maria Garza, Robert Ralls, and Kenny Foster;

- appellees' respective "Interoffice Memorandum," dated between May 14 to 22, 2002, advising DPS that they had "initiated the complaint process" with TCHR concerning the promotion process for "Captain, Narcotics" by "filing an external report, as indicated above";

- Garza's "Intake Questionnaire" to TCHR dated May 21, 2002;

- a letter dated May 14, 2002 from TCHR to DPS, notifying DPS that TCHR had received a "tendered document that constitutes an initial complaint" from Ralls and that "the perfected complaint will be amended to relate back to the date that the initial complaint was received";

- a "referral notice" from the TCHR to Ralls dated May 30, 2002, that his complaint was being referred to the EEOC for investigation;

- a letter dated August 20, 2002, from the EEOC to Ralls "acknowledg[ing] receipt of your charge" and requiring him to sign, date, and return the "EEOC Form 5" [the charge of discrimination];

- the federal court order dated November 7, 2003, in which the federal court granted in part and denied in part DPS's motion for summary judgment;[9] and

- the federal court order dated November 25, 2003, remanding the state court claims and memorializing the various rulings and agreements of the parties.

Garza averred that she filed a "charge of discrimination" within the 180-day statutory period:

---

[9] The federal court denied DPS's summary judgment as to the federal discrimination claims of Garza, Haire, and Lewis and ordered that the "state cause of actions for (1) declaratory judgment that Defendant DPS acted outside its statutory authority during the promotional procedure at issue by filling the Captain positions without examining applicants based on merit, in violation of section 411.007(b) of the Texas Government Code; and (2) violations of the [TCHRA] REMAIN."

5

Based on my personal knowledge, approximately on or before May 21, 2002, I filed a charge of discrimination concerning the promotion announced on November 30, 2001, to become effective December 15, 2001, which is currently at issue in this lawsuit. Pursuant to DPS policy, on May 22, 2002, I provided Captain Esquivel with a memorandum providing the department with actual notice that I had filed a charge of discrimination. The document bearing my name and signature attached to DPS's plea to the jurisdiction is a perfected charge filed pursuant to the Texas Administrative Code Section 327.1(i), and relates back to my original charge filing.

Ralls and Foster similarly averred that they had "filed a charge of discrimination" on or before May 29, 2002, concerning the promotion announced November 30, 2001, and that the document bearing their respective name and signature attached to DPS's plea to the jurisdiction was the perfected charge that related back to their original charge filing.[10] Ralls also averred that he was "tasked with communicating with and ensuring that the other 15 plaintiffs followed the same procedure I did," and that he "confirmed" that each of the "other 15 plaintiffs" followed the same procedure that he did during the period May 14 to 22, 2002.

Appellees' counsel averred concerning the issue of exhaustion:

3.      [I]n connection with the issue of exhaustion, on or before May 30, 2002, either myself or a member of my staff personally contacted each of the 16 clients to confirm that they had followed the procedure as described in the affidavit of Robert E. Ralls and that they had actually filed or cross-filed a charge with the [TCHR] on or before May 30, 2002. Each confirmed that they had.

4.      Additionally, while this case was pending in federal court, the district court raised the issue of exhaustion *sua sponte* during a summary-judgment hearing. I pointed out that DPS had expressly admitted in its answer that all

_____

[10] Appellees' perfected charges were dated between June 24, 2002, and January 9, 2003.

16 Plaintiffs had filed charges and received right-to-sue letters. I also pointed out that this was not an issue raised by DPS. I offered to gather that information if the Court so required to prove exhaustion, but the Court ruled that the admission by DPS was factually sufficient to support its jurisdiction, and DPS did not object to this representation during this hearing.

5. In light of the fact that DPS failed to contest jurisdiction until after this case has been pending for over two years, and the finding of the district court that it had jurisdiction over the TCHRA claims, our firm has not issued an open records act request to the TCHR, but will do so if the Court requires further proof of exhaustion. With the exception of the charge of [ ] Garza, we do not have in our possession a copy of the initial charge filed by the other 16 plaintiffs.

6. Furthermore, there is no dispute that each of the 16 Plaintiffs complied with the time limits for filing a federal discrimination claim. In the federal proceeding, for various reasons including judicial economy, each plaintiff agreed to waive his or her federal claim and proceed only under the TCHRA. As demonstrated by the attached transcript, the federal court was hesitant to approve this until it was reassured that the plaintiffs had viable state-court claims. The AG's office did not dispute this representation to the federal court. Also, the plaintiffs would not have consented to this agreement if there was any dispute as to exhaustion. Plaintiffs acted in reliance on the admission of DPS in its answer.

Appellees stated in their response that they did not have a copy of all the initial charges filed with TCHR regional offices and would issue an open records request to the extent the district court deemed it necessary. Appellees also sought leave to amend their complaint to add their parallel federal claims that were dismissed by the parties' agreement to the extent the district court deemed their TCHRA claims untimely because the federal statutory time period for filing an administrative complaint was 300 days. *See* 42 U.S.C. § 2000e-5(e)(1) (2009). DPS did not object to appellees' evidence, except for Foster's affidavit, and did not file any controverting evidence.

7

After a hearing, the district court overruled DPS's objections to Foster's affidavit and denied the plea to the jurisdiction on July 21, 2004.[11]

Following a two-and-a-half week trial, the jury found that "DPS fail[ed] to conduct the November/December 2001 promotional process in a manner consistent with DPS[ ] written policies and procedures." The jury also found in favor of Garza on her discrimination and retaliation claims and Ralls on his retaliation claim, awarding them monetary damages.[12] Based on the jury's verdict and its equitable powers, the district court rendered judgment, ordering that Garza and Ralls recover monetary damages against DPS, permanently enjoining DPS from discriminatory and retaliatory conduct, and declaring "on all sixteen Plaintiffs' claims" that DPS failed to follow its written policies and procedures for selecting candidates in violation of state law, including section 411.007(b) of the Texas Government Code. *See* Tex. Gov't Code Ann. § 411.007(b). The district court also awarded appellees attorney's fees and costs.

DPS appeals the district court's judgment to this Court, but does not argue and the parties did not brief the jurisdictional grounds raised *sua sponte* by the majority. I limit my analysis

---

[11] DPS appealed the denial of its plea to the jurisdiction by interlocutory accelerated appeal to this Court, but the interlocutory appeal remained pending at the time the district court rendered a final judgment on the merits in February 2005. This Court, in an opinion also authored by the same justice as the majority opinion here, dismissed the interlocutory appeal as moot in April 2005. *See Texas Dep't of Pub. Safety v. Alexander*, No. 03-04-00439-CV (Tex. App.—Apr. 14, 2005), *available at* http://www.3rdcoa.courts.state.tx.us/opinions/Opinion.asp?OpinionID=13648. This Court stated in the opinion that appellant could raise issues concerning the denial of its plea to the jurisdiction in an appeal from the final judgment.

[12] The jury found against Haire, Lewis, Foster, and Lord on their TCHRA claims. The remaining appellees did not submit discrimination or retaliation questions to the jury. Foster and Lord have cross-appealed.

8

today to the district court's jurisdiction to hear appellees' TCHRA and declaratory judgment claims. *See* Tex. R. App. P. 47.1, .5.

### *TCHRA Claims*

This Court, of course, may address the district court's subject matter jurisdiction *sua sponte*. *See Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 444-45 (Tex. 1993). I agree with the majority that the district court did not have jurisdiction of appellees' TCHRA claims if there was no evidence to support the district court's implied finding that appellees timely filed their administrative complaints. *See* Tex. Lab. Code Ann. § 21.202(a); *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005) (legal sufficiency standard of review); *Specialty Retailers, Inc. v. DeMoranville*, 933 S.W.2d 490, 492 (Tex. 1996) (timely filing administrative complaint mandatory and jurisdictional prerequisite to filing suit). I disagree, however, with the majority's application of the no-evidence standard of review to the evidence that supports the district court's implied finding.

There is no evidence to support an implied finding if the record discloses: (i) a complete absence of a vital fact; (ii) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (iii) the evidence offered to prove a vital fact is no more than a scintilla; or (iv) the evidence establishes conclusively the opposite of a vital fact. *City of Keller*, 168 S.W.3d at 810. This Court reviews the evidence in the light most favorable to the finding, crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Id.* at 807. The reviewing court must indulge every reasonable inference that would support the implied finding. *Id*. at 822.

9

Although the parties cannot confer jurisdiction by agreement, the parties can agree on the facts necessary to the court's jurisdiction. *See Kirk v. Head*, 152 S.W.2d 726, 728-29 (Tex. 1941) ("[W]here potential jurisdiction is dependent on the existence of facts, the litigating parties to a cause can agree on the jurisdictional facts; and from such agreed facts the court can determine the question of jurisdiction."); *French v. Moore*, 169 S.W.3d 1, 10 (Tex. App.—Houston [1st Dist.] 2004, no pet.) ("Because the parties in this case agreed on certain facts, and based upon those facts, the trial court determined it had jurisdiction, we conclude that the county court at law properly determined that it had jurisdiction over this lawsuit."). Facts that are alleged by both parties or admitted in trial pleadings are established as a matter of law and do not require further proof. *See Shepherd v. Ledford*, 962 S.W.2d 28, 33 (Tex. 1998) (stipulation is "an agreement, admission, or concession made in a judicial proceeding by the parties or their attorneys respecting some matter incident thereto") (citation omitted); *Hennigan v. I.P. Petroleum Co., Inc.*, 858 S.W.2d 371, 372 (Tex. 1993) (judicial admission is a formal waiver of proof ); *see also Houston Lighting & Power Co. v. City of Wharton*, 101 S.W.3d 633, 641 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) (providing stipulation conclusive on issue addressed and parties estopped from claiming to the contrary).

In response to DPS's plea to the jurisdiction, appellees submitted evidence of the federal court proceeding, and DPS did not object to this evidence. Appellees' counsel averred that DPS expressly admitted in its answer in federal court that all sixteen plaintiffs had filed charges and received right-to-sue letters and that appellees agreed to dismiss their federal claims in reliance on DPS's admission in its answer. Transcripts from federal court hearings and the federal court's orders

10

also show that the federal court raised the issue of jurisdiction with the parties, discussed the parties' agreement to dismiss the parallel federal claims and remand the state claims, and agreed to honor the parties' agreement.

Appellees' counsel and the federal court had the following exchange concerning the exhaustion of the Title VII and TCHRA claims for Haire, Lewis, and Garza at the summary judgment hearing without any objection by DPS's counsel:

| Appellees' Counsel: | . . . Your Honor raised concerns with our three Title VIIs, TCHRA Plaintiffs Haire, Lewis and Garza, and the concern was exhaustion. I cannot point to the record where I show that they have a right to sue letter, but we pleaded in our complaint that they had filed with the TCHRA and the EEOC and that they received right to sue letters. And in paragraph 107 of the answer, it says, defendants lack sufficient information to form beliefs as to the truth of the agreements of this paragraph except that they admit that plaintiffs filed charges with the EEOC and TCHRA and received right to sue letters . . . . |
|---|---|
| Federal Court: | Well, part of the problem—and I assume that their right to sue letters and timely suit was filed. [sic] |
| Appellees' Counsel: | Yes, sir. |
| Federal Court: | All right. |
| Appellees' Counsel: | I don't think that's an objection. I'd represent to the Court that we timely filed. |

DPS's counsel remained silent.

At a subsequent hearing, counsel and the federal court also had the following exchange concerning the parties' agreement to dismiss the parallel federal claims and remand the state claims remaining after summary judgment:

| | |
|---|---|
| DPS's Counsel: | There may be a way and that is if the state—remaining state law—purely state law claims go back to state court and the plaintiffs move to dismiss their—just the federal claims that are due to be tried, then you have, in effect—then, the plaintiffs are in a posture to cross-appeal that part of the summary judgment that dismissed claims that they wanted to try. And at the same time that the defendants appeal the denial of qualified immunity on the two 1983 and the Fifth Circuit considers it all at once and decides if there's any part of it that they want to let go or not. |
| Federal Court: | Of course, they'd be giving up their Title VII claims. |
| DPS's Counsel: | Well, that's what we discussed. |
| Appellees' Counsel: | Your honor, [DPS's counsel] and I have spoken about that and subject to what the Court is willing to do here, we are prepared to dismiss with prejudice the federal Title VII, remand the balance to state court, the declaratory judgment action, and the state civil rights claims, have him perfect his appeal on the First Amendment issues, and then, we only have one trial in this court which—with all due respect, I would ask the Court to please consider that it makes more sense to just have one trial on these issues here and permit us just to do that. And [DPS's counsel] and I have spoken about it and it is entirely in the Court's discretion, but we have a basic agreement as a plaintiff and defendant that we're agreeable to doing that, your Honor. |
| Federal Court: | Well, I don't feel too good that I feel like I'm forcing this to some degree. Well, I do that. And then, secondly, I'm a little worried. Of course, I know that y'all have good client control, obviously, but here without your clients, you're considering waiving a Title VII case . . . . The problem there |

12

is, do you have authority? Do you feel like you've got authority to waive all of those Title VII claims?

Appellees' Counsel: Yes, sir. We have spoken.

Federal Court: Okay.

\* \* \*

Appellees' Counsel: And if I could add, your Honor. We're waiving the Title VII, but they're essentially redundant claims. We don't feel like we're waiving any substantive rights if we waive the Title VII and proceed under the TCHRA because the standards are effectively the same and the remedies are comparable, if not almost exactly the same.

Federal Court: Oh, I see, you're going to take that into the state court. All right. I missed that. I'm sorry. All right. Well, what do you want me to do?

Appellees' Counsel: We would ask the Court to dismiss with prejudice the federal Title VII, enter whatever order the Court is—finds appropriate with respect to the First Amendment claims, remand to state court a declaratory judgment action. We will work out the logistics of that. We'll handle the state court civil action or civil rights claims and the dec[laratory] action in state court. And we'll deal with the First Amendment issues after the Fifth Circuit has spoken.

Federal Court: Okay.

\* \* \*

Federal Court: And then, as soon as y'all see the summary judgment rulings, then y'all tender me an agreed order on that, and we'll proceed on that basis.

Finding the parties' agreement furthering "the interests of both comity and judicial economy," the federal court ordered:

13

It is therefore **ORDERED** that the federal claims of Plaintiffs Garza, Haire, and Lewis, for violations of Title VII, the ADEA, and the First Amendment (under 42 U.S.C. § 1983), are **dismissed with prejudice**, by agreement of the parties. The parallel claims of Plaintiffs Garza, Haire, and Lewis, for violations of the TCHRA, arising out of the 2001 Narcotics Captain's promotions, and subsequent discrimination and retaliation, are **remanded** to the 200th Judicial District Court of Travis County, Texas . . . by agreement of the parties.

It is **FURTHER ORDERED** that the federal claims of all Plaintiffs for retaliation and discrimination that are currently ripe and that arise after the 2001 Narcotics Captain's promotions, are **dismissed with prejudice**, by agreement of the parties. The parallel claims for retaliation in violation of the TCHRA that are currently ripe and that arise after the 2001 Narcotic's Captain's promotions, are **remanded** to the 200th Judicial District Court of Travis County . . . by agreement of the parties.

It is **FURTHER ORDERED** that the claims of all Plaintiffs to this lawsuit for declaratory and injunctive relief under state law are **remanded** to the 200th Judicial District Court of Travis County . . . by agreement of the parties.

In reaching its no-evidence finding, the majority fails to credit appellees' evidence concerning the federal proceeding, misapplying our standard of review. *See City of Keller*, 168 S.W.3d at 810. Based on this evidence, it is clear beyond cavil that the parties agreed to the jurisdictional fact that appellees timely filed their charges of discrimination. *See Kirk*, 152 S.W.2d at 728-29; *Shepherd*, 962 S.W.2d at 33; *French*, 169 S.W.3d at 10.[13]

---

[13] The right-to-sue letters are additional support that appellees timely filed their administrative complaints. *See City of La Joya v. Ortiz, No.* 13-06-401-CV, 2007 Tex. App. LEXIS 818, at *9 (Tex. App.—Corpus Christi Feb. 1, 2007, no pet.) (mem. op.) ("[T]he fact that the Texas Workforce Commission issued a right to sue letter, instead of dismissing the complaint as untimely, is additional evidence that the complaint was timely filed."); *Westbrook v. Water Valley Indep. Sch. Dist*., No. 03-04-00449-CV, 2006 Tex. App. LEXIS 3845, at *10 (Tex. App.—Austin May 5, 2006, pet. denied) (mem. op.) ("Although an employee is not required to obtain a right to sue letter prior to filing suit, if the employee has received one, it evidences that she has exhausted her administrative remedies before the TCHR."); *see also* Tex. Lab. Code Ann. § 21.202(b) (West 2006) ("The commission shall dismiss an untimely complaint.").

14

But, even without the evidence concerning the federal court proceeding, the majority misstates the factual determination by framing it to be "whether the plaintiffs raised any evidence that they filed, on or before May 29, 2002, an administrative complaint with TCHRA that met all the requirements listed in section 21.201 of the labor code and set forth the specific factual allegations upon which they later filed suit." *See* Tex. Lab. Code Ann. § 21.201.[14] At its core, the majority concludes that appellees' TCHRA claims are time-barred because appellees failed to show that the content of the documentation that they submitted to the TCHR during the allowable 180-day period contained "the components of a proper complaint." *See id.*

Appellees' uncontroverted evidence was that they timely filed their administrative complaints. Appellees stated in their respective memorandum that they had initiated the complaint process with TCHR, concerning the promotion process for "Captain, Narcotics" by "filing" a report, "as indicated above." Ralls averred that he "filed a charge of discrimination" timely and that the other appellees followed the same procedure that he did, and appellees' counsel averred that he had confirmed with each appellee that his or her administrative complaint had been timely filed. It was also undisputed that appellees' perfected charges that were attached to DPS's plea to the jurisdiction

---

[14] The majority relies upon *Federal Express Corporation v. Holowecki*, 552 U.S. 389 (2008), "for the general principle that the complaint itself has significance and must contain certain substantive components." I agree that the perfected complaint must contain certain substantive information but disagree that a perfected complaint can only relate back to an initial complaint that contains all of the required information. *See* Tex. Lab. Code Ann. § 21.201(e), (f) (West 2006). The majority also miscites *Elgaghil v. Tarrant County Junior College*, 45 S.W.3d 133, 142 (Tex. App.—Fort Worth 2000, pet. denied). Our sister court addressed the limitations on a plaintiff's discrimination claims brought in a TCHRA suit to the "kind of discrimination like or related to the charge's allegations," but DPS does not contend that appellees allege a "kind of discrimination" that they failed to raise in their administrative complaints.

15

complied with the form and content requirements of section 21.201 of the labor code, and that each appellee had received a right-to-sue letter from the TCHR. Therefore, the district court could have found, without reviewing the actual documentation appellees initially filed, that *any* omission or technical defect in the documentation did not prevent the properly perfected charges from relating back to the date the initial charges were filed. *Id* § 21.201(e), (f)[15]; *see also City of Keller*, 168 S.W.3d at 822; *Hennigan*, 858 S.W.2d at 373 (verified complaint filed outside 180-day time period "relates back to, and satisfies *any* deficiencies in an unverified questionnaire" filed within the 180-day period) (emphasis added); *Texas Tech Univ. v. Finley*, 223 S.W.3d 510, 514-15 (Tex. App.—Amarillo 2006, no pet.) (court, drawing distinction between "original complaint" and "perfected complaint," concludes letter, the "original complaint," satisfied jurisdictional requirements). On this record, I would conclude that the failure to produce any actual documentation that appellees initially filed with TCHR did not preclude the district court from finding that the perfected charges related back to the date the initial charges were filed and, therefore, that appellees timely filed their administrative complaints.

---

[15] The relation back provisions of subsections (e) and (f) of section 21.201 provide:

    (e)    A complaint may be amended to cure technical defects or omissions, including a failure to verify the complaint or to clarify and amplify an allegation made in the complaint.

    (f)    An amendment to a complaint alleging additional facts that constitute unlawful employment practices relating to or arising from the subject matter of the original complaint relates back to the date the complaint was first received by the commission.

*See* Tex. Lab. Code Ann. § 21.201(e), (f); *see also id*. § 21.202(b) (commission shall dismiss untimely complaints).

Most disturbing is the majority's finding that there was no evidence that Garza or Ralls—the two appellees that recovered on their TCHRA claims—timely filed an administrative complaint. DPS argues that "thirteen [other than Garza and Ralls] failed to create a fact issue as to timely filed charges of discrimination," but that those thirteen did not recover on their TCHRA claims. DPS does not contend that Ralls and Garza failed to show that they timely filed administrative complaints. *See Hennigan*, 858 S.W.2d at 373; *Brammer v. Martinaire, Inc.*, 838 S.W.2d 844, 846-47 (Tex. App.—Amarillo 1992, no writ) (verified complaint relates back to the date the original complaint—an unverified questionnaire—was filed and satisfies any deficiencies).[16] Despite DPS's agreement of the jurisdictional facts as to Garza and Ralls, the majority proceeds with its own fact-finding to conclude that all the appellees failed to timely file their administrative complaints.

In its analysis concerning Garza, the majority concedes that a timely filed intake questionnaire may satisfy section 21.202 of the labor code and that Garza produced her intake questionnaire in response to DPS's plea to the jurisdiction, but finds, nonetheless, there was no evidence to support timeliness. Crucial to the majority was the lack of a "file stamp" on Garza's intake questionnaire to prove timely receipt by the TCHR. Without a file stamp or other notation

---

[16] In its renewed issues concerning the denial of its plea to the jurisdiction, DPS contends that the district court lacked jurisdiction over appellees' TCHRA retaliation claims because appellees "were unable to create a fact issue as to a causal link between their protected activity and their subsequent inability to promote" and that the district court erred in refusing to stay the trial during the pendency of the interlocutory appeal. I further observe that in the interlocutory appeal, which is no longer before us, DPS also did not urge that appellees Garza and Ralls had failed to create a fact issue as to the timeliness of their administrative complaints. In its briefing in the interlocutory appeal, DPS stated that "Garza and Ralls provided evidence of their submission of the questionnaire referred to in *Hennigan* and *Brammer*."

17

on the questionnaire, the majority concludes that there is no "logical bridge" between the intake questionnaire and the timely filing of that questionnaire. But the intake questionnaire is dated May 21, 2002, and Garza averred that "[o]n or before May 21, 2002, I filed a charge of discrimination concerning the promotion announced on November 30, 2001."[17] Appellees' counsel also averred that the only "initial charge" that they had in their possession was Garza's. The majority does not address counsel's affidavit and discounts Garza's because she did not specifically reference the intake questionnaire but the "charge of discrimination." But, a reasonable inference is that Garza and appellees' counsel were referring to her "intake questionnaire" when they referred to her initial

---

[17] Further, DPS's counsel elicited the following testimony from Garza on cross-examination:

Q.  Nonetheless, at some point in the spring of 2002 you filed charges, a charge of discrimination with the [TCHR], correct?

A.  That was in early May.

Q.  Well, let's be clear. In early May you contacted the [TCHR], right?

A.  No sir. I submitted—actually I went down there and picked up the application, filled out the application and submitted it.

* * *

Q.  All right, you went down there, and on that date they gave you a packet of materials, which you filled out, right?

A.  Yes, sir.

Q.  And by doing that you initiated the process of filing a charge with the [TCHR]?

A.  That's correct, sir.

18

"charge" that was filed within the 180-day period. *See City of Keller*, 168 S.W.3d at 822; *see also Stanley Stores, Inc. v. Chavana*, 909 S.W.2d 554, 559 (Tex. App.—Corpus Christi 1995, writ denied) (whether and when EEOC received discrimination complaint generally fact issue for fact-finder).

As to Ralls's evidence, the majority similarly finds that, although there was some evidence he filed a document complaining of discrimination within the 180-day period, there was no evidence of its content to show that it was "proper." But, Ralls averred that he filed a charge of discrimination timely, and the submitted evidence included the letter from TCHR to DPS dated May 14, 2002—within the 180 day period—advising DPS that Ralls had "tendered [a] document that constitutes an initial complaint" and that the perfected complaint would relate back to the date of his initial complaint. This letter supports a reasonable inference that the document Ralls filed constituted an initial complaint that allowed his perfected complaint to relate back to its filing date and further supports the district court's implied finding of timeliness.[18]  *See City of Keller*,

---

[18]  DPS's counsel elicited the following testimony from Ralls on cross-examination:

Q.     . . . Like some of the other plaintiffs have testified, is it correct that you at some point contacted the [TCHR]?

A.     Yes, sir.

Q.     And you got some sort of packet from them?

A.     Yes, sir, and a questionnaire.

Q.     All right.  And you filled that out and sent it back to them, right?

A.     Yes, sir.

19

168 S.W.3d at 822. Irrespective of the other appellees' evidence of timeliness, I would conclude that the evidence was legally sufficient to support an implied finding that Garza and Ralls timely filed their administrative complaints to support the district court's jurisdiction to hear their TCHRA claims. *See id.*

### *Declaratory Judgment Claims*

The majority holds that the district court did not have jurisdiction over appellees' declaratory judgment claims because the TCHRA is the exclusive statutory remedy available for appellees' claims. To reach its holding, the majority relies on its findings of fact that appellees failed to timely file their administrative complaints and their declaratory judgment claims were "in fact" employment discrimination claims requiring them to be brought under and satisfy the requirements of the TCHRA. The majority again ignores the parties' arguments on appeal, as well as appellees' pleaded claims for declaratory relief.

Appellees sought a declaration that the November 2001 promotion process violated state law and departmental policy, including section 411.007(b) of the government code. *See* Tex. Gov't Code Ann. § 411.007(b). The jury found that DPS "fail[ed] to conduct the

---

Q.     And then they sent you a formal charge?

A.     Yes, sir.

Q.     And you submitted that?

A.     Yes, sir.

20

November/December 2001 promotional process in a manner consistent with DPS[ ] written policies and procedures." Consistent with the jury's finding, the district court declared:

> It is **FURTHER DECLARED** and **ADJUDGED** on all sixteen Plaintiffs' claims that DPS is required by law to follow its written policies and procedures for selecting candidates based on a fair and competitive process; that the Department failed to follow this law and policy with respect to the 2001 Captain's promotional process; and that senior officials intentionally circumvented this law and manipulated the process to promote eleven pre-selected candidates. Plaintiffs are entitled to a declaration that the 2001 Captain's promotion process was not based on merit in violation of state law and departmental policy, including § 411.007(b) of the Texas Government Code.

DPS does not contend that the district court was without jurisdiction to hear appellees' declaratory judgment claims because they were "in fact" TCHRA claims or that there was no evidence to support the jury's finding that DPS had violated its policies.[19] Instead, DPS concedes that there was evidence that DPS violated section 07.26 of its general manual that requires that each promotion board member independently reach its decision. Similarly, DPS's plea to the jurisdiction

---

[19] DPS challenges appellees' standing, which is an element of subject matter jurisdiction, to seek a prospective injunction concerning DPS's promotions because four out of six of the members on the promotion board have retired, an argument not addressed by the majority. *See Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 444-45 (Tex. 1993) (standing element of subject matter jurisdiction). DPS also argues on appeal that appellees should have sued DPS officials and not DPS directly under the UDJA. The majority agrees, concluding that appellees' declaratory judgment claims are also barred by sovereign immunity because they brought suit only against DPS, and not its officials. *See City of El Paso v. Heinrich*, 284 S.W.3d 366, 373 (Tex. 2009). Because the Texas Supreme Court only recently clarified the proper party to sue, at a minimum, I would grant appellees' request to remand to substitute the correct parties if necessary. *See Exxon Corp. v. Tidwell*, 867 S.W.2d 19, 23 (Tex. 1993) (remanding cause in the interests of justice in light of new standard announced by court); *Fanning v. Fanning*, 847 S.W.2d 225, 226 (Tex. 1993) (per curiam) (op. on reh'g) (remand in interests of justice after law changed while appeal was pending); *see also* Tex. R. App. P. 43.3(b).

21

only challenged appellees' TCHRA claims.  Further, in its motion for judgment notwithstanding the verdict, DPS argued that appellees' discrimination and retaliation claims were "conceptually distinct" from their allegations of "rigging" the promotion process:

> [T]he UDJA-related issue of whether the promotion board members colluded to rig the November 2001 promotions is conceptually distinct from the issue of whether the decision-makers in the November 2001 and subsequent promotions were motivated by discrimination or retaliation.  That is, if the promotion process complied with the relevant DPS procedures, a declaratory judgment must be denied even if the decision-makers were improperly motivated.  Conversely, if the promotions were not discriminatory or retaliatory, the failure to follow DPS procedure is irrelevant to the [TCHRA] claims.

The majority equates appellees' declaratory claims with the plaintiff's Whistleblower Act claims in *City of Waco v. Lopez*, 259 S.W.3d 147 (Tex. 2008).  But, in that case, the plaintiff only alleged retaliatory discharge for reporting age and race discrimination in violation of the City's EEO policy.  *Id*. at 149-50, 156.  In contrast, appellees' declaratory judgment claims do not depend on a finding of discrimination or retaliation as a motivating factor—as recognized by DPS, but not the majority.  The employee's Whistleblower Act claims in *Lopez* are not analogous here.

I would conclude that the district court had jurisdiction of appellees' declaratory judgment claims.  *See Texas Dep't of Pub. Safety v. Moore*, 985 S.W.2d 149 (Tex. App.—Austin 1998, no pet.).  In *Moore*, this Court held that the trial court had jurisdiction to hear the employee's declaratory claim that DPS acted outside its statutory authority in filling four high-ranking positions without examining the applicants on merits.  *Id*. at 153-54.  The "crux" of the issue in *Moore* was the application of section 411.007(b) to the advancement of personnel within DPS through promotion or appointment.  *See id.* at 154.  Appellees sought a similar declaration here.

22

**CONCLUSION**

After allowing this case to languish on appeal and failing to act in a timely manner on the accelerated interlocutory appeal, the majority avoids addressing the issues raised by the parties by vacating and dismissing appellees' claims on jurisdictional grounds. I lament the rogue nature of the majority opinion that further delays the justice long sought by all parties in this appeal. In the face of strong evidence of "rigging" the promotion process, clear and timely complaints—particularly Garza's and Ralls's—and DPS's litigation strategy, it is surprising I am sure to the parties that the appeal not be determined on a basis presented by the parties themselves.[20] Because I would conclude that the district court had jurisdiction to hear appellees' TCHRA and declaratory judgment claims, I respectfully dissent.[21]

---

[20] In its initial brief, DPS sought for this Court to reverse the district court's judgment and render judgment in its favor or, alternatively, to reverse and remand. In its reply brief, DPS sought reversal and that the injunction be vacated because the district court exceeded its authority in its permanent injunction. Additionally, DPS contended that the retaliation claims could be considered by this Court on the jurisdictional grounds raised in the interlocutory appeal and renewed in this appeal that appellees "were unable to create a fact issue as to a causal link between their protected activity and their subsequent inability to promote." *See supra* note 16. DPS further stated that, if this Court remands for "erroneous denial of the stay,""[t]he TCHR Act causes of action that would be remanded for retrial would be the gender discrimination claim of Garza, and four retaliation claims—Garza and Ralls (appealed by DPS) and Lord and Foster (appealed by the plaintiffs)."

[21] Had appellees failed to exhaust their administrative remedies, they would have been allowed to amend their pleadings to allege their parallel federal claims that they dismissed based upon DPS's agreement. *See County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002) (plaintiffs should be given opportunity to cure jurisdictional defects in pleadings).

_____

Jan P. Patterson, Justice

Before Justices Patterson, Puryear and Waldrop

Filed:   October 22, 2009